John P. TRONCELLITI, on behalf of
himself and all others
similarly situated

v.

MINOLTA CORPORATION, Sam Kusu-
moto, James D. Demerlier, Robert T.
Lathrop, and John Doe Cos. 1 Through
1000.

Civ. No. B–86–3848.

United States District Court,
D. Maryland.

June 23, 1987.

Richard D. Greenfield, Greenfield & Chi-micles, Haverford, Pa., for plaintiffs.

A. Paul Victor, Richard Taffet, Weil, Gotshal & Manges, New York City, Donald E. Sharpe, Esq., Baltimore, Md., for defendants.

WALTER E. BLACK, Jr., District Judge.

Thirty-six states and the District of Columbia ("the States"), acting as *parens patriae* on behalf of their resident consumers, pursuant to 15 U.S.C. § 15c(a)(1), initiated antitrust actions identical to the action filed in this private class action. The *parens patriae* actions resulted in Settlement Agreements identical to the one presently before this Court for consideration of final approval. The States of New York and Maryland filed their Complaints on February 24, 1986, and the Commonwealth of Pennsylvania filed its Complaint on April 11, 1986. After the filing of these initial Complaints, extensive settlement negotiations ensued between counsel for Minolta Corporation ("Minolta") and counsel for these three States. These negotiations proved to be successful, and on July 17, 1986, New York and Maryland executed their respective Settlement Agreements with Minolta; Pennsylvania executed its Agreement on August 18, 1986.

The Complaints in these actions alleged that Minolta and numerous camera retailers, named and unnamed in this action, entered into a nationwide conspiracy to fix, maintain, or stabilize the retail prices at

which the Minolta Maxxum and Minolta AF–Tele camera products were sold to the public, in violation of federal and state antitrust laws.

Because the challenged retail pricing policies of Minolta were applied nationwide, Minolta had knowledge that other States would be conducting their own investigations, and, therefore, offered the same terms of settlement that had been agreed to by New York, Maryland, and Pennsylvania nationwide. This resulted in thirty-four additional States filing their Complaints on October 6, 1986, each in its *parens patriae* capacity. Plaintiff, John P. Troncelliti, brought this class action antitrust suit in August, 1986. The class presently includes Troncelliti, and all others similarly situated, who purchased the Minolta Maxxum or AF–Tele products and resided within the states of Alabama, Georgia, Hawaii, Idaho, Louisiana, Maine, Michigan, Mississippi, Montana, Oklahoma, Rhode Island, South Carolina, Tennessee, and Wyoming (those States not included in the thirty-six *parens patriae* suits) at the time of purchase, and all other persons, who are not natural persons, including all proprietorships, partnerships, corporations, and other entities who purchased at retail a Maxxum or AF–Tele, but excluding (i) any federal, state, and local government purchasers, (ii) any un-named co-conspirator, and (iii) defendants or any subsidiary or affiliate of defendants or any manufacturer of cameras. This suit is the subject of a Settlement Agreement, with terms identical to those reached between the States and Minolta in the *parens patriae* actions, and will now be considered by the Court. This settlement contemplates that the class will be comprised of residents in those fourteen states that did not file a *parens patriae* lawsuit and those other entities who made purchases as described above.

Plaintiff in this action has submitted to the Court his Settlement Agreement with defendant Minolta for approval pursuant to 15 U.S.C. § 15c(c) and Fed.R.Civ.P. 23(e). The Court has had the opportunity to consider the memorandum in support of the joint motion for final approval of the Settlement Agreement in the *parens patriae* actions which was adopted by the parties in this proceeding, along with the parties' comments on the terms of the settlement at an open hearing held on June 19, 1987. This Court is also quite familiar with the terms of the Settlement Agreement from prior proceedings, including preliminary approval of the Settlement Agreement on February 18, 1987.

The Court will summarize the terms of this Agreement which are virtually identical to the Settlement Agreements executed by the States and Minolta in the *parens patriae* suits before determining whether it satisfies the requirements for final approval of the Court.

The Agreement provides that natural persons residing in the States included in this action at the time of the purchase, or any other person, which is not a natural person, who purchased at retail a Maxxum 7000 or AF–Tele camera from January 1, 1985, through March 21, 1986, ("qualified purchaser"), are eligible to receive a refund of $15.00 for each Maxxum purchased and $8.00 for each AF–Tele purchased. In order to qualify for such payment, a qualified purchaser must complete and file a claim form.

Minolta has agreed to pay into an interest-bearing account a total of $782,615 (the "Settlement Account"), an amount sufficient to pay $15.00 for every Maxxum and $8.00 for every AF–Tele sold by Minolta to the class of plaintiffs in this action for the period of March 1, 1985 through March 21, 1986 (the "Settlement Period"). The end date of this period was one week after Minolta sent a letter to each of its retail customers suspending its policy of terminating retailers who did not comply with the minimum price schedules for these products. The Agreement excludes from Minolta's obligation the two-month period from January 1, 1985, through March 1, 1985, because of Minolta's continued assertion that no antitrust injury resulted from the suggested minimum price in effect during that period. The Agreement, however, provides for payment of claims made by individuals who purchased the Maxxum and AF–Tele during such period. Included

in the amount deposited in the Settlement Account is $1.00 per camera sold during this time period to partially cover the administrative costs incurred by the plaintiffs in implementing this Agreement.

In order to ascertain the appropriate amount that was placed in the Settlement Account, Minolta provided sales data, which it maintains in the regular course of its business, reflecting the number of cameras it sold at retail in each State included in this action during the Settlement Period.

The claim form that each purchaser had to complete and submit to a claims processor in order to be eligible for a refund has been previously approved by the Court. It requests certain basic identifying information as to the type of camera purchased, its serial number, and the date and place of purchase. Minolta and its retailers provided the States with purchaser information in the form of a warranty card sent by purchasers to Minolta and in the form of retail sales documents. Minolta has agreed not to object to any purchasers' claims which have been so identified by Minolta and its retailers that are consistent with their records.

The Settlement Agreement provided for a detailed and comprehensive process for notifying potential claimants of the existence of the Agreement. Within 30 days following the execution of the Settlement Agreement, Minolta identified potential qualified purchasers by producing to the claims administrator its records kept in the ordinary course of its business which would identify such purchasers. In addition, Minolta sought the cooperation of its dealers in the 14 states which are involved in this class action in order to obtain records they maintained that would help identify qualified purchasers and would, accordingly, convey such information to the claims administrator. Within 90 days after the execution of the Agreement, plaintiff provided notice to such identified qualified purchasers, and within 105 days of the execution of the Agreement provided notice through publication in *USA Today* and in *Popular Photography*. The deadline for filing of a claim in this private class action was June 15, 1987.

Under the terms of the Agreement, the payment of attorneys' fees, not to exceed $20,000 and disbursements, not to exceed $1,000, is the first priority claim, followed by settlement notice and administration costs, an award to plaintiff, who commenced this action, not to exceed $2,000, and finally by the claims of qualified purchasers.

The parties have agreed that the claims administrator shall mail the payments to qualified purchasers who have submitted approved claims within 45 days of final Court approval of the settlements, and that these checks shall be valid for six months, in accordance with the provisions of the Uniform Commercial Code.

In addition to the above described monetary payment, Minolta has agreed to the entry of a Final Judgment and Consent Decree. The consent decree provides in pertinent part that for five years Minolta will not agree with its retailers to fix, maintain, or stabilize the retail prices at which any of the items in the Maxxum or AF–Tele product lines are sold to the public. Minolta is further enjoined from terminating, or otherwise discriminating against, any retailers of these camera lines who fail to adhere to Minolta's suggested pricing of these products. Finally, it is agreed that Minolta must inform its current retailers in each State, and those who become retailers in each State during the injunctive periods, of their right to independently determine the retail prices at which these products are sold to consumers.

The plaintiffs have agreed in return for the above monetary payments and injunctive relief to dismiss their claims, on the merits and with prejudice, against Minolta upon final approval of the Settlement Agreement by the Court. They have further agreed that they will not sue any Minolta dealer located within their States and not named as a defendant in these lawsuits.

## STANDARDS FOR APPROVAL

■ The standard for determining whether a proposed settlement should be

approved, is whether the settlement is "fair, reasonable and adequate." *Manual on Complex Litigation* § 1.46 at 56–57 (5th ed. 1982); *In re Mid-Atlantic Toyota Antitrust Litigation,* 605 F.Supp. 440, 442 (D.Md.1984). In *Mid-Atlantic Toyota,* at 442, 443, the Court followed the bifurcated analysis of late Judge Blair of this District in determining whether the proposed settlement was worthy of Court approval. That analysis included separate inquiries into the "fairness" and the "adequacy" of the proposed settlement. On the element of "fairness," Judge Blair stated:

> The factors tending to reveal the fairness of a settlement are those which indicate the presence or absence of collusion among the parties. Because of the danger of counsel's compromising a suit for an inadequate amount for the sake of insuring a fee, the court is obligated to ascertain the settlement was reached as a result of good-faith bargaining at arm's length. The good faith of the parties is reflected in such factors as the posture of the case at the time settlement is proposed, the extent of discovery that has been conducted, the circumstances surrounding the negotiations and the experience of counsel.

*In re Montgomery County Real Estate Antitrust Litigation,* 83 F.R.D. 305, 315 (D.Md.1979). In addressing the second element of "adequacy" Judge Blair stated:

> In evaluating the "adequacy" of a proposed settlement, the court must weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement. This necessarily requires the court to make a careful assessment of all the facts and a thorough analysis of the applicable law. It is not, of course, necessary or desirable to "try" the case to determine whether a settlement is adequate since the very purpose of settlement is "to avoid the trial of sharply disputed issues and to dispense with wasteful litigation.
>
> In assessing the adequacy of the proposed settlement, courts should weigh the amount tendered to the plaintiffs against such factors as (1) the relative strength of the plaintiffs' case on the

merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

## FAIRNESS

█ This Court finds that the Settlement Agreement was reached as a result of good-faith bargaining conducted at arm's length between experienced counsel. The negotiations which resulted in the initial settlements were conducted by members of the Attorney General Offices of the original three states involved, who have expertise in antitrust and complex multi-party litigations and by Weil, Gotshal and Manges, a prominent litigation firm in New York, likewise experienced and able, which devotes a significant portion of the firm's practice to antitrust matters. The negotiations resulting in the instant Settlement Agreement were also conducted by experienced and able counsel, Richard D. Greenfield, of Greenfield & Chimicles in Haverford, Pennsylvania. Only following months of extensive pre-complaint investigations conducted by the Attorney General Offices in Maryland, New York and Pennsylvania, were the initial lawsuits filed. Settlement negotiations ensued between counsel soon after the commencement of the suits and were directed at settling the litigation as to Minolta as well as to all Minolta retailer defendants.

The Settlement Agreement before this Court was reached in January 1987 after months of negotiations. The plaintiffs before the Court now include those consumers residing in states that did not choose to file a *parens patriae* action on their behalf.

At all times the nature of these settlement negotiations was adversarial. Indeed, the comprehensiveness of the settlement suggests the professionalism underlying it. There is nothing in the record which would indicate the settlement was

reached prematurely, through collusion, or that the negotiations were conducted in bad faith. The Court cannot overlook the governmental nature of the *parens patriae* suits, which resulted in the initial settlement, where the primary concern of the attorney generals was the protection of and compensation for the states' resident consumers, rather than insuring a fee for themselves, which can only be obtained under the Settlement Agreement after satisfaction of the purchasers' claims. Although counsel in this case has petitioned the Court to award counsel fees of 20,000, which will be granted by the Court in a separate ruling, the Court is persuaded by the fact that the actual terms of the Settlement Agreement were reached by the Attorney Generals in Maryland, New York, and Pennsylvania, who were motivated by non-monetary concerns. The Court concludes the settlement was reached in an appropriate and fair manner.

ADEQUACY

■ Relying on the factors articulated by Judge Blair, the Court finds that the monetary payments that will be made to qualified applicants represent the amounts by which these consumers were allegedly overcharged because of the Minolta retail pricing policies challenged in this lawsuit. Robert J. Larner, an expert economist of the economic research and consulting firm of Charles River Associates, has provided the Court with evidence of the effect that Minolta's pricing policies had on retail prices. In his twenty-seven page affidavit filed with the Court on December 10, 1986, he concluded through an analysis of market factors during the relevant period and of available evidence from pricing surveys that

> (1) it is unlikely that Minolta's policies with respect to suggested minimum retail prices had the effect of elevating the average retail price of the Maxxum 7000 by an amount as large as $15, and (2) it is also unlikely that the same policies had the effect of elevating the average retail price of the AF–Tele by more than $8.

In his conclusion he stated,

> that the proposed settlement between the states and Minolta is fair, reasonable, and adequate in protecting the interests of the consumers on whose behalf the states are acting. I have found no reason to think that the settlement would not adequately compensate consumers for any overcharge they may have paid as a result of Minolta's pricing policies. This opinion is based upon my study of the marketplace in which the SLR cameras are sold, my evaluation of the circumstances surrounding the introductions of the Maxxum 700 and AF–Tele cameras, my analysis of the available evidence, and my assessment of the difficulties and risks facing the plaintiffs at trial in establishing the extent of damages.

In light of this evidence, the Court concludes that the amount received by each qualified purchaser will compensate those consumers for their actual loss which occurred as a result of the alleged conspiracy.

This recovery weighed against the relative strength of plaintiff's case on the merits indicates that the proposed settlement is adequate. While the plaintiff believes the facts that would be presented at trial would establish the pricing conspiracy, convincing a jury that Minolta and its retailers violated the antitrust laws could nonetheless prove difficult. The proposed settlement reflects an appropriate balance between the finding of no violation of the antitrust laws or no damages to the consumers on the one hand, and the potential of treble damages on the other. Indeed, the certainty of the settlement amount and the opportunity for wide-spread distribution far outweigh any loss of punitive recovery. The Court finds the balance particularly appropriate when the continuation of this litigation would entail significant costs to all involved.

The almost complete absence of opposition to the settlement in this case and in the thirty-six *parens patriae* actions also supports a finding of adequacy in this case. No consumers appeared at the hearing, and counsel represented to the Court at the hearing that few objections to the settle-

ment were received. After reviewing the specific objections made in the *parens patriae* suits, and counsel's representation that the objections received in this case were substantially similar, this Court does not find that the dissatisfaction expressed renders the settlement inadequate. In summary, the weight of these factors leads this Court to conclude that the proposed settlement is fair, reasonable and adequate. Accordingly, the Court will grant final approval of the settlement in a separate Order.