**In re DUN & BRADSTREET CREDIT SERVICES CUSTOMER LITIGATION.**

Civ. A. Nos. C–1–89–026, C–1–89–051, 89–2245, 89–3994, and C–1–89–408.

United States District Court, S.D. Ohio, W.D.

Feb. 23, 1990.

Gregory A. Ruehlmann, William H. Blessing, Cincinnati, Ohio, Duke W. Thomas, Columbus, Ohio, for Interbank Leasing Corp.

Louis F. Gilligan, Richard L. Creighton, Jr., Cincinnati, Ohio, for W.M. Hershman, Inc.

W. Stuart Dornette, John A. Heffernan, Taft, Stettinius & Hollister, Cincinnati, Ohio, David L. Grove, David H. Marion, Dennis P. Lynch, Montgomery, McCracken, Walker and Rhoads, Philadelphia, Pa., for Dun & Bradstreet.

Thomas R. Meites, Chicago, Ill., for Fed. Deposit Ins. Corp. & Resolution Trust.

Deborah R. Gross, Bernard M. Gross, Gross, Sklar & Metzger, P.C., Philadelphia, Pa., for Frank Sussman Co.

Howard J. Sedran, David Berger, Harold Berger, Philadelphia, Pa., for Le Damor, Inc.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court for determination of settlement approval pursuant

to Fed.R.Civ.P. 23(e). The Court makes the following findings of fact and conclusions of law:

### Background

1. On January 12, 1989, a class action complaint was filed in the action *Interbank Leasing Corporation v. Dun & Bradstreet Corp. and Dun & Bradstreet, Inc.*, Civil Action No. C–1–89–026 (S.D.Ohio). Subsequently, additional class action complaints were filed in this Court and in the Eastern District of Pennsylvania. *W.M. Hershman, Inc. v. Dun & Bradstreet Inc. and Dun & Bradstreet Corp.*, Civil Action No. C–1–89–051 (S.D.Ohio, filed January 23, 1989); *LeDamor, Inc. v. Dun & Bradstreet*, Civil Action No. 89–2245 (E.D.Pa., filed March 29, 1989); *Frank Sussman Co. v. Dun & Bradstreet, Inc.*, Civil Action No. 89–3994 (E.D.Pa., filed May 19, 1989); *Mutual Mfg. & Supply Co. v. Dun & Bradstreet Corp. and Dun & Bradstreet, Inc.*, Civil Action No. C–1–89–408 (S.D.Ohio, filed June 6, 1989). All of the class action complaints centered upon allegations that Defendants engaged in a nationwide scheme fraudulently to sell credit information to its customers, in violation of federal racketeering laws and the common law. The *Hershman* action additionally alleged violations of federal antitrust laws. Defendants responded, denying all allegations.

2. Following institution of the suits, all parties engaged in discovery, including the taking of depositions, extensive document production, and transfer of Dun & Bradstreet computer database information.

3. Defendants filed motions to dismiss the complaints in all but the *Mutual* action, where a motion would have been filed if the time period for response had not been extended. Defendants also opposed class certification motions in the *Interbank, Hershman* and *LeDamor* actions. The pleadings and other proceedings in these actions have revealed the existence of sharply contested issues of fact and law, including issues as to whether: (a) any class could be certified; (b) plaintiffs could establish the liability of Defendants; and (c) plaintiffs have sustained any recoverable damages.

4. From April to August, 1989, the parties engaged in settlement discussions. On August 9, 1989, the parties entered into the proposed settlement agreement which has led to the present proceeding.

5. On August 9, 1989, the Court preliminarily approved the proposed settlement, certifying for the limited purpose of the Stipulation of Settlement a class consisting of the following:

All proprietorships, firms, corporations and other entities who purchased one or more regular or special domestic contracts in excess of 100 Regular Units in any contract year from Dun & Bradstreet, Inc. for credit reporting services (also known as "business information services") commencing from January 1, 1983 through June 30, 1988 ("the Class").

On August 23, 1989, the Court entered an order consolidating for the purposes of settlement the five federal actions, under the consolidated caption "In Re Dun & Bradstreet Credit Services Customer Litigation." On February 5, 1990, plaintiffs filed a "Second Consolidated Amended Complaint." On February 13, 1990, Defendant filed an Answer to the Second Consolidated Amended Complaint denying the material allegations and interposing a number of defenses to the claims asserted.

### Requirements For Class Action Settlement

6. In order to settle a class action lawsuit, court approval is required, pursuant to Fed.R.Civ.P. 23(e). Rule 23(e) provides:

Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

7. There are three steps that must be taken by the court: 1) the court must preliminarily approve the proposed settlement; 2) members of the class must then be given notice of the proposed settlement; 3) a hearing must be held, after which the

Court must decide whether the proposed settlement is fair, reasonable and adequate. *Williams v. Vukovich,* 720 F.2d 909 (6th Cir.1983); *Stotts v. Memphis Fire Department,* 679 F.2d 541 (6th Cir.1982), *reversed on other grounds, sub nom Firefighters Local Union No. 1784 v. Stotts, et al.,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483; *Bronson v. Board of Education of the City School District of the City of Cincinnati,* 604 F.Supp. 68 (S.D.Ohio 1984); *Thompson v. Midwest Foundation Independent Physicians Ass'n,* 124 F.R.D. 154 (S.D.Ohio 1988).

## Preliminary Approval

■ 8. Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive. *Bronson,* 604 F.Supp. at 71; *Stotts,* 679 F.2d at 551; *United States v. City of Miami,* 614 F.2d 1322, 1330–31 (5th Cir.1980), *modified on reh'g,* 664 F.2d 435 (5th Cir.1981). Once the court has given preliminary approval, an agreement is presumptively reasonable, and an individual who objects has a heavy burden of demonstrating that the decree is unreasonable. *Vukovich,* 720 F.2d at 921; *Bronson,* 604 F.Supp. at 71; *Stotts,* 679 F.2d at 551; *Miami,* 614 F.2d at 1333.

9. On August 9, 1989, after a hearing was held, this Court preliminarily approved the proposed settlement agreement. This Court based its preliminary approval on its familiarity with the problems and issues presented in these cases, and the character of the negotiations. This Court concluded that the proposed settlement agreement was neither illegal nor collusive, and that it was the product of arms-length negotiations.

## Notice Of The Proposed Settlement

■ 10. Notice to the members of the class, both of proposed settlement and that a hearing would be held to determine whether the settlement was fair, adequate and reasonable, is required. *Vukovich,*

720 F.2d at 921; *Bronson,* 604 F.Supp. at 71; *Stotts,* 679 F.2d at 551.

11. Contemporaneous with its preliminary approval of the proposed settlement, this Court approved the form of notice proposed by the parties, and ordered that on or before September 30, 1989, the approved form of notice be sent by Defendants to each class member, at the class member's last known business address appearing in Dun & Bradstreet Credit Services' computerized customer records. In addition, provision was made for notice by two separate publications in the *Wall Street Journal,* to take place by October 20, 1989. Moreover, this litigation generated great public interest, and was covered in depth by local, as well as national media.

■ 12. The notice of the proposed settlement agreement and fairness hearing scheduled for February 14, 1990 was complete and sufficient under Rule 23, Fed.R. Civ.P., as it allowed members of the class a full and fair opportunity to consider the proposed settlement, and to develop a response. *Vukovich,* 720 F.2d at 921.

13. The Court held a hearing on this matter on February 14, 1990 and received at the hearing and in advance thereof written and oral presentations of counsel for the respective parties as to the issue of compliance with this Court's Order dated August 9, 1989. As a result thereof this Court finds that the parties have carried out all of the requirements of its order.

## The Fairness, Reasonableness And Adequacy Of The Proposed Settlement

14. On February 14, 1990, the Court held a hearing in order that the parties and class members could comment on the proposed settlement agreement. The Court permitted anyone present to be heard and three of the class representatives made statements to the Court in addition to counsel for all parties. Based upon the testimony adduced at that hearing, the evidence before it, and the Court's familiarity with this matter, the Court finds that the proposed settlement agreement is fair, reasonable and adequate.

15. The Court has considered the following factors in arriving at its conclusion: 1) the Plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; 2) the complexity, expense and likely duration of the litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the judgment of experienced trial counsel; 5) the nature of the negotiations; 6) the objections raised by class members; and 7) the public interest. *Vukovich*, 720 F.2d at 922; *Bronson*, 604 F.Supp. at 73; *Thompson*, 124 F.R.D. at 157. In addition, this Court has kept in mind that the law generally favors and encourages the settlement of class actions. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir.1981), *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir.1982); *Thompson*, 124 F.R.D. at 157.

### Plaintiffs' Likelihood Of Ultimate Success On The Merits Balanced Against The Relief Offered By The Proposed Settlement Agreement

16. Plaintiffs face risks in continuing forward with this litigation. Defendants have continuously and emphatically denied their culpability. Defendants' motions to dismiss, and to deny certification, are pending before the Court. Should Defendants prevail on their motions to dismiss or should the class not be certified, many of the class members may effectively be left without a remedy, because their individual claims would be too small to litigate.

17. Even should Plaintiffs survive Defendants' motions for dismissal and to deny class certification, and survive potential future motions for summary judgment, a trial on the merits would require resolution of numerous complex issues of law and fact. Each of the foregoing issues would be fully and actively contested by Defendants during trial.

18. Even if Plaintiffs ultimately prevail at trial and are awarded damages, lengthy appeals might be forthcoming due to the significant and complex legal issues presented in this case.

19. Balanced against the above possibilities is the immediate relief offered by the proposed settlement agreement. Part of the relief would provide for immediate money payments to thousands of Class Members. As of February 14, 1990, counsel for Plaintiffs estimated that the claims to date were less than the approximately $18 million settlement fund created, which would allow for full payment of valid claims. In addition, the settlement affords significant non-monetary relief directed at averting the conditions that Plaintiffs claim led to the damages they suffered. This non-monetary relief provides a benefit to all Class Members.

20. Balanced against the risks posed to Plaintiffs by the continuation of the litigation, the proposed settlement is fair, reasonable and adequate.

### The Complexity, Expense And Likely Duration Of The Litigation

21. Despite its relatively short duration, this has already been a complex and expensive case. Plaintiffs have submitted affidavits representing that time valued in excess of one million dollars for attorney, paralegal, law clerk and administrative services has been expended, and that Plaintiffs have already incurred costs and expenses of over $100,000, exclusive of attorney time. The additional legal fees and expenses to bring this case to trial would be substantial and trial would be extremely time-consuming and costly for all parties.

22. The proposed settlement will expedite compensation to Class Members suffering damages and will allow for immediate remedial restructuring, and will further Class Members' interests in a timely and cost-effective manner. These factors indicate that the proposed settlement is fair, reasonable and adequate.

### The Stage Of The Proceedings, And The Amount Of Discovery Completed

23. Fairly extensive discovery has been completed and the parties now face the issues raised by motions for dismissal, and for class certification, discussed above. The discovery completed includes produc-

tion of thousands of documents by Defendants, depositions of a number of Defendants' personnel, and transmittal and analysis of Defendants' computer database information. The parties are fully knowledgeable about the facts and legal issues involved, as well as the strengths and weaknesses of their positions.

### Judgment Of Experienced Trial Counsel

24. Counsel in this matter have extensive experience in complex class action litigation. The Court pays particular attention to the opinion of all counsel that the proposed settlement agreement is fair, adequate and reasonable.

### The Nature Of The Negotiations

25. The proposed settlement was the result of intense, arms-length negotiations between the parties. The proposed settlement agreement suggests no bias, collusion or coercion in favor of any party or subgroup of class members.

### Objections Raised By Class Members

26. No timely objection was raised by any Class Member to the proposed settlement, and less than 5% of all Class Members have chosen to opt out. One untimely objection, improper in other regards, was filed and subsequently withdrawn prior to the fairness hearing. No objection was raised at the fairness hearing. The Court gives these factors substantial weight in approving the proposed settlement. *See Seagoing Uniform Corp. v. Texaco, Inc.,* [Current] Fed.Sec.L.Rep. (CCH) paragraph 94,791, 1989 WL 129691 (S.D.N.Y.1989).

### Defendants' Right To Withdraw

27. The Defendants acknowledged in open court that, based upon the facts known to date, the right to withdraw under paragraph 28 of the settlement agreement has become moot.

### The Public Interest

28. The proposed settlement serves the public interest. Expeditious resolution of this case allows Defendants to implement remedial procedures as well as compensate Class Members for their contested damages now, rather than prolonging implementation until after a trial and appeal, if at all. Time-consuming and expensive litigation will be avoided, the dispute will be resolved, and resolved in a manner which does its best to ensure that Defendants can continue to provide valuable service to Class Members in an atmosphere that will foster trust and confidence.

### Conclusions Of Law And Findings Regarding Proposed Settlement

29. In light of the foregoing requisite factors, the Court concludes that the proposed settlement is a fair, adequate and reasonable settlement of the plaintiff Class Members' claims against the Defendants. Further, based upon the facts known to date, the right of Defendants to withdraw from the settlement is moot.

30. This case involves a fee application under the "common fund" doctrine. It is well-settled that an attorney who recovers a common fund for the benefit of a class of persons in commercial litigation is entitled to reasonable attorneys' fees and expenses payable from that fund. *Blum v. Stenson,* 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478–79, 100 S.Ct. 745, 749–50, 62 L.Ed.2d 676 (1980); *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 391–92, 90 S.Ct. 616, 625–26, 24 L.Ed.2d 593 (1970); *Smillie v. Park Chemical Co.,* 710 F.2d 271, 275 (6th Cir.1983); *Basile v. Merrill, Lynch, Pierce, Fenner & Smith,* 640 F.Supp. 697, 699–700 (S.D.Ohio 1986).

31. Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created. *See In Re Cincinnati Gas & Electric Co. Securities Litigation,* 643 F.Supp. 148, 150 (S.D.Ohio 1986); *In Re Warner Communications Securities Litigation,* 618 F.Supp. 735, 749–50 (S.D.N.Y.1985). In this case, class counsel applied for an award of attor-

neys' fees and expenses in an amount equal to 15% of the settlement fund, including interest, available at the time of distribution.

■ 32. The factors relevant to an award of attorneys' fees from a common fund in this Circuit are: 1) the value of the benefit rendered to the class; 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; 3) whether the services were undertaken on a contingent fee basis; 4) the value of the services on an hourly basis; 5) the complexity of the litigation; and 6) the professional skill and standing of all counsel. *Smillie v. Park Chemical Co.*, 710 F.2d at 275. *Accord Basile*, 640 F.Supp. at 700; *see also Thompson*, 124 F.R.D. at 162.

33. Class counsel have rendered a substantial benefit to the class in this case. Counsel have obtained a monetary fund that will amount to over $19 million at the date of distribution. Based upon the claims to date, this could pay 100% of all valid claims without proration. In addition, class counsel obtained significant non-monetary benefits, requiring important changes in the operating procedures of D & B, that will unquestionably aid and financially benefit all Class Members in their future business dealings with D & B. Society has an interest in rewarding attorneys such as Class counsel, who have provided benefits of the nature encompassed in this settlement.

34. Class counsel undertook their representation upon a fully contingent basis, entailing a risk of over a million dollars of attorney time, and over one hundred thousand dollars of costs. Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated. *See Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624, 638 (6th Cir.1979).

■ 35. The value of the services provided on an hourly basis, or "lodestar" figure, is relevant to the fee determination in a common fund case. *See Smillie*, 710 F.2d at 275. After determining this lode-

star figure the district court may adjust the award in order to reflect factors such as the economic benefit conferred upon class members. *Id.* In conjunction with their application for a fee award, Class counsel have submitted fee affidavits that evidence work performed with an hourly value in excess of $1.163 million, and costs of approximately $113,732.71. In consideration of the contingent nature of the case, and the value of the monetary and non-monetary benefits conferred upon the Class Members as a result of the settlement, substantial enhancement of the lodestar figure is appropriate to adequately compensate class counsel. Class counsel will incur additional expenses and counsel time in the ultimate resolution of this case.

■ 36. It is clear from both the time records submitted and the Court's observation that Class counsel spent a great deal of time and effort in a case that was complex both factually and legally, and did so both efficiently and with great expertise, warranting a substantial fee award. *See Smillie*, 710 F.2d at 275.

37. The Court has heard counsel on behalf of the plaintiffs and counsel on behalf of the defendants, and all other persons desiring to be heard, and having reviewed all of the submissions presented with respect to the Application For and Memorandum in Support of An Award of Attorneys' Fees and Expenses to Class Counsel, and having reviewed the affidavits, schedules and exhibits submitted in support thereof, the Court finds that the payment of attorneys' fees, costs and expenses to the Class counsel pursuant to the Application is appropriate.

■ 38. The Class Representatives, comprised of the five companies who were plaintiffs in the original federal actions, have applied to this Court for incentive awards. *Application for Class Representative Incentive Award and Memorandum in Support.*

39. Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

See *Wolfson v. Riley,* 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.,* 621 F.Supp. 27, 32 (E.D.Pa.1985); *In re Minolta Camera Products Antitrust Litigation,* 666 F.Supp. 750, 752 (D.Md.1987), sub-captioned *Trancelliti v. Minolta Corp.,* No. 86–3848. Moreover, a differentiation among class representatives based upon the role each played may be proper in given circumstances. *See In Re Jackson Lockdown/MCO Cases,* 107 F.R.D. 703, 710 (E.D.Mich.1985).

40. All of the class representatives in filing suit against D & B took action to protect the interests of the Class Members and others, incurring substantial direct and indirect financial risks in attempting to vindicate the rights of others. In addition, all of the class representatives spent a good deal of time and effort in this case, as reflected in the supporting affidavits they filed. Two of the class representatives, Interbank and Hershman, are particularly worthy of note, in that: 1) they were the first to file cases; 2) they spent a great deal of time and were very active in reviewing the case and acting as advisors to Class counsel in the prosecution and settlement of this case; 3) and their businesses were disrupted and their time was expended by responding to discovery, including undergoing depositions.

41. The Court having heard argument, and having reviewed the Application for Class Representative Incentive Award and the affidavits in support thereof, the Court finds that the following additional payments shall be made from the settlement fund at the time of its distribution to Class Members, as incentive awards to the class representatives for their time and expenses: Fifty-five Thousand ($55,000) Dollars to Interbank, Fifty–Five Thousand ($55,000) Dollars to Hershman, Thirty–Five Thousand ($35,000) Dollars to LeDamor, Thirty–Five Thousand ($35,000) Dollars to Sussman, and Thirty–Five Thousand ($35,000) Dollars to Mutual.

42. The Court finds that there is no reason for delay in the entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and the Clerk of the District Court is directed to enter this judgment. Certification under Rule 54(b) will not result in unnecessary appellate review nor will review of the adjudicated claims moot any further developments in this case. Even if subsequent appeals are filed, the nature of these claims are such that the appellant court would not have to decide the same issues more than once.

*Order*

By order dated August 9, 1989, this court, for purposes of settlement only, conditionally certified named Plaintiffs as representatives of settlement class, which includes as Class Members all proprietorships, firms, corporations, and other entities purchasing one or more regular or special domestic contracts in excess of 100 Regular Units in any contact year from Dun & Bradstreet, Inc. for credit reporting services (also known as "business information services") commencing from January 1, 1983 through June 30, 1988 ("Class Period"). Named Plaintiffs, acting on behalf of themselves and the Class Members, have entered into a Stipulation of Settlement dated August 9, 1989 (the "Stipulation") with Defendants The Dun & Bradstreet Corporation and Dun & Bradstreet, Inc. ("Defendants") in settlement of the above-captioned actions (the "Litigation"). Plaintiffs and Defendants have applied to this Court for approval of the stipulation and the terms thereof pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

On August 9, 1989, an Order with Respect to Class Action Certification, Notice, Settlement Hearing and Administration was entered by this Court directing that notice be given to the Class Members of the class certification, of the proposed Settlement, and of a hearing to determine whether the proposed Settlement should be approved as fair, adequate and reasonable, and to hear any objections thereto. Such a hearing was held, as noticed, on February 14, 1990. Prior to the hearing, proof of notice, as directed in said Order, was presented and filed. Class Members were given the opportunity to file a Request for Exclusion from the Class on or before November 28, 1989, and, for certain specified

Class Members, the time within which they were required to file a Request for Exclusion was extended by order of this Court. Class Members were also notified of their right to appear at the hearing in support of or in opposition to the proposed Settlement. No Class Member appeared or filed papers to oppose the proposed settlement.

Class Members were also notified that counsel for the named Plaintiffs would apply for an award of attorneys' fees and expenses in an amount equal to 15% of the total settlement fund including interest created by the proposed Settlement, that the named Plaintiffs would each apply for an incentive award for their efforts on behalf of the class, and that both of these applications would be considered at the hearing on the proposed Settlement. Prior to the hearing, the applications for attorneys' fees and expenses and incentive awards were made. No Class Member appeared or filed papers to oppose the applications.

The Court, having heard counsel on behalf of the parties and all other persons who desired to be heard, having reviewed all of the submissions presented with respect to the proposed Settlement, attorneys' fees and expenses, and incentive awards, having determined that the Settlement is fair, adequate and reasonable, that the application for attorneys' fees and expenses in the amount of 15% of the settlement fund, including interest, is appropriate and reasonable, and that incentive awards to the named Plaintiffs are warranted, and Defendants having acknowledged that their right to elect to withdraw from the Settlement as provided in paragraph 28 of the Stipulation of Settlement, based upon the facts known to date, is moot, all of which is set forth in the Findings of Fact and Conclusions of Law filed of even date herewith, it is hereby ORDERED, ADJUDGED AND DECREED THAT:

1. "Class Members" are as described above, excluding all entities who timely filed a request to be excluded from the Class, pursuant to Rule 23(c)(2) Federal Rules of Civil Procedure. A list of all entities that have timely filed a Request for Exclusion shall be filed with the Court under seal on or before March 30, 1990. The entities on this list shall not participate in any portion of the Settlement fund.

2. The proposed Settlement (as set forth in the Stipulation of Settlement dated August 9, 1989) ("Stipulation") is in all respects, fair, adequate, reasonable and proper and in the best interests of the Class Members and is approved.

3. Notice to the Class Members required by Rule 23(e) Federal Rules of Civil Procedure has been given in an adequate and sufficient manner, was the best notice practicable under the circumstances, complying in all respects with such Rule and due process, including, but not limited to, the form of notice and the methods of identifying and giving notice to the Class Members.

4. Named Plaintiffs, Class Members and Defendants shall consummate and be bound by the Settlement.

5. These actions are dismissed with prejudice and on the merits and without costs, and all claims, rights, demands and causes of action for, by reason of, arising from or in any way relating to contracts for the purchase of Units commencing during the Class Period, which the named Plaintiffs and Class Members or any of them have or may have, or which have been or could have been asserted against Defendants in connection with, arising out of, or in any way related to any acts, failures to act, omissions, misrepresentations, facts, events, transactions, occurrences or other matters set forth, alleged, embraced or otherwise referred to in the Litigation, including, without limitation, in the Second Consolidated Amended Complaint filed pursuant to the Stipulation, including all claims for violations of federal, state, common or other law, are discharged and extinguished.

6. Upon this Order of the Court approving the Settlement described in the Stipulation becoming final and non-appealable (on the "Settlement Effective Date" as defined in paragraph 15(k) of the Stipulation), Plaintiffs and all Settlement Class Members and their respective heirs, executors,

administrators, representatives, agents, successors and assigns, shall be deemed to release and forever discharge the Defendants and their present and former officers, directors, shareholders, employees, agents, successors and assigns of and from all claims which arise out of or relate to contracts for the purchase of Units (as defined in Paragraph 15.1 of the Stipulation of Settlement) commencing during the Class Period including, any and all manner of actions and causes of actions, suits, obligations, claims, debts, demands, agreements, promises, covenants, contracts, liabilities, controversies, costs, expenses and attorneys' fees, or any nature whatsoever, in law or in equity, whether known or unknown, foreseen or unforeseen, matured or unmatured, accrued or not accrued, direct or indirect, which the Plaintiff and the Settlement Class Members, or any of them, ever had, now have or can have, or shall or may hereafter have against any person or entity, either alone or in combination with others, for, by reason, arising from or in any way relating to contracts for the purchase of Units commencing during the Class Period, involving, any one or more of the following:

(i) alleged fraud, misrepresentations, or omissions in connection with the purchases of Units from Dun & Bradstreet, Inc. ("DBI");

(ii) alleged misrepresentations, fraud, or omissions in connection with negotiations and renewals of credit-reporting contracts with DBI;

(iii) alleged misrepresentations, fraud, or omissions by Defendants employees, sales representatives, support personnel, officers, directors or agents;

(iv) alleged fraud, misrepresentations, or omissions with respect to calculations, charges or inquiries;

(v) all claims which are asserted in the Second Consolidated Amended Complaint or which in any way relate to or arise from the facts, transactions, matters, occurrences or events surrounding, or which are set forth in, the Second Consolidated Amended Complaint; and

(vi) all claims or causes of action relating to or arising from any fact, transaction, matter, occurrence or event which in whole or in part formed the subject matter of the Litigation, or relating to or arising from any purchase of credit reporting services from DBI.

Nothing contained herein is intended to release claims relating to payments allegedly made to and not properly credited by Dun & Bradstreet.

7. Plaintiffs and each and every Class Member not excluded from the Class are permanently barred, either directly, derivatively, or representatively, from asserting against any persons or entities any actions and causes of action, suits, obligations, claims, debts, demands, agreements, promises, covenants, contracts liabilities, controversies, costs, expenses, and attorney fees for, by reason of, arising from or in any way relating to contracts for the purchase of Units commencing during the Class Period, or any nature whatsoever, in law or in equity, whether known or unknown, foreseen or unforeseen, matured or unmatured, accrued or not accrued, direct or indirect, arising during the Class Period, which Plaintiffs and the Settlement Class Members, or any of them, ever had, now has or can, shall or may hereafter have for, by reason of, arising from or in any way relating to or involving any or all of those matters described in (i)-(vi) of paragraph 6.

8. The application of Plaintiffs' class counsel for an award of attorneys' fees and expenses in an amount equal to 15% of the settlement fund, including interest, available for distribution to the class of the date of distribution is hereby granted. Payment shall be made at the time of final distribution, upon and subject to final approval of this Court.

9. The application for incentive awards to compensate the named Plaintiffs and class representatives for all time, risk and expenses is hereby granted in the following amounts: W.M. Hershman, Inc., $55,000; Interbank Leasing Corp., $55,000; The Mutual Mfg. & Supply Co., $35,000; Frank Sussman Co., $35,000 and; LaDamor, Inc. $35,000. Payment shall be made at the

time of final distribution, upon the subject to final approval of this Court.

10. Jurisdiction is hereby retained as to matters related to administration and consummation of the Settlement hereby approved.

11. The Court finds that there is no reason for delay in the entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and the Clerk of the District Court is directed to enter this judgment. Certification under Rule 54(b) will not result in unnecessary appellate review nor will review of the adjudicated claims moot any further developments in this case. Even if subsequent appeals are filed, the nature of these claims are such that the appellant court would not have to decide the same issues more than once.

IT IS SO ORDERED.