**Don VAN VRANKEN, on behalf of himself and all others similarly situated, and Lew & Ted's Service, Inc., Plaintiffs,**

v.

**ATLANTIC RICHFIELD COMPANY, Defendant.**

Civ. No. 79–0627 SW.

United States District Court, N.D. California.

Aug. 16, 1995.

Cooper & Kirkham, Josef Cooper, Tracy Kirkham, San Francisco, CA, Howrey & Simon, J. Michael Hennigan, Los Angeles, CA, Sommer & Barnard, William Barnard, Edward Harris, Indianapolis, IN, for plaintiffs.

Morrison & Foerster, F. Bruce Dodge, San Francisco, CA, Steptoe & Johnson, David Roll, Alfred Mamlet, George Peirce, Washington, DC, for defendant.

## ORDER GRANTING ATTORNEYS' FEES, EXPENSES, AND AN INCENTIVE AWARD TO THE NAMED CLASS REPRESENTATIVE

SPENCER WILLIAMS, District Judge.

Plaintiffs brought this class action against Defendant Atlantic Richfield Company ("ARCO") alleging violations of § 201 of the Economic Stabilization Act ("ESA") based on ARCO's interaffiliate pricing policies and noncompliance with regulations governing import fees and duties. After trial and various appeals, the parties agreed to a settlement which this Court approved in February of 1994. Class Counsel now move for: 1) an award of attorneys fees; 2) reimbursement of expenses and; 3) an incentive award to the named class representative. Based on the following, the Court GRANTS Class Counsel $19,180,803.07 in fees and $2,406,606.90 in expenses. The Court also GRANTS Don Van Vranken, the named class representative, $50,000 for his efforts during this litigation.

## BACKGROUND

Plaintiffs commenced this case on March 23, 1979, although the litigation did not begin in earnest until Plaintiffs filed their Second Amended Complaint in 1985 following the Court's lifting of the stay imposed during Department of Energy ("DOE") compliance proceedings. The Second Amended Complaint alleged four causes of action based on ARCO's interaffiliate pricing policies and vio-

lations of DOE regulations governing import fees and costs.

After many years of litigation, the case finally went to trial in June of 1992. The jury found for ARCO on the interaffiliate pricing claim, but for Plaintiffs on the import fees and duties claims. The jury awarded Plaintiffs $22,800,000 in damages. After the Court added pre and post-judgment interest, the total award amounted to $67,548,713.26.

ARCO appealed the verdict to both the Ninth and Federal Circuit Courts of Appeal. Soon thereafter, Class Counsel petitioned for statutory fees under section 210(b) of the ESA. While the appeals and fee petition were still pending, the parties agreed to settle the case.

Under the terms of the settlement, ARCO agreed to pay the class the full amount of the judgment, $67,548,713.26, plus taxable costs of $49,500. In addition, ARCO added $9,125,000 to the fund as settlement for Class Counsel's statutory fee application. Thus, the total settlement fund became $76,723,-213.26. In exchange, ARCO received a reverter of up to $9,000,000 of any unclaimed money left in the fund after distribution to Class Counsel and to class members. The Court granted its preliminary approval for this settlement in December of 1994 and final approval in February of 1995.

Now, Class Counsel has filed an application for attorneys' fees seeking an award of 40 percent of the fund, or $30,689,285.30, as compensation for their efforts during this case. Class Counsel also requests $2,406,-606.90 as reimbursement for litigation expenses and $100,000 as an incentive award to Don Van Vranken, the named class representative.

The Court has received numerous oppositions to Class Counsel's fee application, both from attorneys representing groups of class members, as well as from individual class members themselves.

## DISCUSSION

### I. *ATTORNEYS' FEES*

Class Counsel characterizes its proposed 40 percent fee as "reasonable compensation"

for its efforts in a case that "taxed [their] personnel and economic resources almost to the breaking point." In response, various class members and their attorneys have labelled Class Counsel's requested fee as "astounding," "unreasonable," "clearly excessive" and "way too much." *See* Objection of Class Member Thrifty Oil Co. To Class Counsel's Motion for an Aggregate Award of Attorneys' Fees; Memorandum in Support of the Notice of Opposition of the Class Members Comprising the ARCO Jobbers Group; Letter from Class Member Pellett Petroleum, Inc.; Letter from Class Members G. and Elaine Swank.

In considering Class Counsel's fee application, the Court must first determine which method to employ in calculating the appropriate fees, the lodestar method or the percentage of the fund method. Thereafter, the Court must evaluate the specific circumstances of this case to determine what amount of fees should be awarded.

### A. *Method of Calculating Fees*

■ In common fund cases such as this, the Ninth Circuit allows a district court to employ either the percentage of the fund method or the lodestar method when awarding fees. *In re Washington Pub. Power Supply System Securities Litigation*, 19 F.3d 1291, 1294 n. 2 (9th Cir.1994). The Ninth Circuit has not expressed any explicit preference for either method so long as the ultimate fee award is reasonable under the circumstances. *Id.* at 1296; *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir.1990). The decision of which method to employ is within the sound discretion of the district court. *See In re Washington Public Power*, 19 F.3d at 1296 ("in common fund cases, no presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other").

■ Here, the Court will employ both methods to arrive at a reasonable fee under the circumstances. First, the Court will calculate a rough estimate of an appropriate fee by employing the percentage of the fund method. Thereafter, the Court will use the

lodestar method to verify that the awarded fee is equitable.

### 1. *The Percentage of the Fund Method*

■ Under the percentage of the fund method, the Court simply awards class counsel a certain portion of the fund as compensation for their efforts. In setting a common fund fee, the court's role is essentially to take the place of the face-to-face negotiations that otherwise would have occurred between class counsel and class members had they retained attorneys individually.

The Ninth Circuit has established a "benchmark" of 25 percent for awards of attorneys' fees in common fund cases. *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir.1989). This percentage can be adjusted upwards or downwards to account for special or unusual circumstances. *Id.* The Ninth Circuit has not clearly defined what sort of factors constitute unusual circumstances other than to state they must "indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990).

■ Here, Class Counsel request a fee award of $30,689,285.30, representing 40 percent of the settlement fund. Class Counsel assert that such a percentage is within the proper range for attorney's fees in common fund cases as set out by the Ninth Circuit. Although Class Counsel admit that 40 percent is on the high end of this purported range, they claim that such an award is justified by the unusual circumstances of this case, such as the length of litigation, the complexity of issues, and so forth.

Class Counsel cite numerous cases that they claim establish a range of permissible fee percentages extending from 20–50 percent of the fund. *See, e.g., In re Warner Communications Securities Litigation,* 618 F.Supp. 735, 749 (S.D.N.Y.1985) ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%–50% range in class actions"); *In re Dun & Bradstreet Credit Services Customer Litigation,* 130 F.R.D. 366, 372 (S.D.Ohio 1990) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created"). Class Counsel have also cited 73 district court opinions in which fees in the range of 30–50 percent of the common fund were awarded. *See, e.g., In re Ampicillin Antitrust Litigation,* 526 F.Supp. 494, 503 (D.D.C.1981) (awarding 40.4 percent of $7.3 million fund); *Van Gemert v. Boeing Co.,* 516 F.Supp. 412, 420 (S.D.N.Y.1981) (awarding 36 percent of $8.9 million fund); *In re Control Data Corp. Securities Litig.,* No. 3–85–1311 (D.Minn. Sept. 21, 1994) (awarding 37 percent of $8 million fund).

After reviewing the authority Class Counsel has submitted, the Court finds their requested 40 percent fee to be excessive under the circumstances of this case. There is no doubt that Class Counsel's commendable efforts during this lengthy and complicated case should be rewarded. However, Class Counsel's request for a 40 percent fee fails to account for the size of the $76 million common fund. *See In re Washington Pub. Power,* 19 F.3d at 1296 (affirming district court's decision to award $32 million in fees representing only 4.7 percent of the fund where the $687 million fund was so large that a $171.75 benchmark award of 25 percent would have been excessive compared to the time and efforts expended by class counsel); *In re Domestic Air Transp. Antitrust Litigation,* 148 F.R.D. 297, 350 (N.D.Ga.1993) ("percentage awards tend to decline as the size of the recovery increases").

Most of the cases Class Counsel have cited in which high percentages such as 30–50 percent of the fund were awarded involved relatively smaller funds of less than $10 million. *See, In re Ampicillin,* 526 F.Supp. at 503; *Van Gemert,* 516 F.Supp. at 420; *In re Control Data Corp. Securities Litig.,* No. 3–85–1311. By contrast, in cases where common funds are in the range of $51–75 million, fees most often fall in the 13–20 percent range. *In re Domestic Air Transp.,* 148 F.R.D. at 350–51; *See, e.g., In re Gypsum Cases,* 386 F.Supp. 959 (N.D.Cal.1974) (awarding 12.35 percent of $75 million fund),

*aff'd* 565 F.2d 1123 (9th Cir.1977); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451 (10th Cir.1988) (awarding 16.5 percent of $75 million fund), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). Moreover, in megafund cases with class recoveries of $75–$200 million, courts are even more stringent, and fees in the 6–10 percent range and lower are common. *In re Domestic Air Transp.,* 148 F.R.D. at 351; *See, e.g., In re Folding Carton Antitrust Litig.,* 84 F.R.D. 245 (N.D.Ill.1979) (awarding fees amounting to 6.6 percent of $200 million fund); *Sioux Nation of Indians v. U.S.,* 650 F.2d 244, 227 Ct.Cl. 404 (1981) (awarding 10 percent of $106 million fund); *In re MGM Grand Hotel Fire Litigation,* 660 F.Supp. 522 (D.Nev. 1987) (awarding 7 percent of more than $200 million fund).

Therefore, after balancing Class Counsel's efforts during this litigation against the large size of the common fund, the Court finds that a benchmark award of 25 percent, or $19,180,803.07, is warranted under the circumstances.

### 2. *The Lodestar Method*

To verify the reasonableness of a 25 percent fee award, the Court will also employ the lodestar method, and examine Class Counsel's time cards and billing records submitted to support their request for fees.

■ Under the lodestar method, the Court first calculates the "lodestar" by multiplying the reasonable hours expended by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986). The court may then enhance the lodestar with a "multiplier", if necessary, to arrive at a reasonable fee in light of all the circumstances of the case. The factors that may be relevant to a lodestar/multiplier analysis include: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the requisite legal skill necessary; 4) the preclusion of other employment due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount at controversy and the results obtained; 9) the experience, repu-

tation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client and; 12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation. *See Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 549 (S.D.Fla.1988) (awarding multiplier of 3 and commenting that "[t]he range of lodestar multiples in large and complicated class actions runs from a low of 2.26 to a high of 4.5"); *Keith v. Volpe,* 86 F.R.D. 565, 575–77 (C.D.Cal.1980) (awarding multiplier of 3.5).

■ Here, Class Counsel states that they have spent 38,768 hours on this case, amounting to a total expenditure of $10,692,067.25. Using Class Counsel's numbers, if the Court awards $19,180,803.07 in fees representing 25 percent of the common fund, the multiplier would be approximately 1.8 ($19,180,803.07 ÷ $10,692,067.25). This would be a relatively low multiplier.

■ However, these calculations are undermined by Class Counsel's failure to account for their lack of success on the class's interaffiliate pricing claim. In cases where class counsel's efforts meet with only "partial or limited success," they are not entitled to collect attorneys' fees for all the billable hours and expenses incurred during the litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 435–37, 103 S.Ct. 1933, 1940–41, 76 L.Ed.2d 40 (1983); *Thorne v. City of El Segundo,* 802 F.2d 1131, 1141 (9th Cir.1986). Here, Plaintiffs sought and were denied more than $200 million on their interaffiliate pricing claim, compared to a recovery after trial of slightly more than $22 million on their other three claims. The Court must take this into consideration when awarding fees.

The Court acknowledges that the claims in this case overlap to a large degree, making it difficult to determine how many hours Class Counsel spent on their losing claim. Nonetheless, it is possible to compute a reasonable estimate of these hours based on the number

and complexity of the claims and the damages sought for each claim.

If the claims were of equal complexity and the damages sought for each claim were the same, computing an estimate would be a relatively easy task. Under those circumstances, it would be reasonable to assume that Class Counsel allocated their time equally to each of the four claims. If that assumption was accurate, it would be appropriate to compensate Class Counsel for 75 percent of their billable hours. Were the Court to award Class Counsel 25 percent of the common fund using this formula, the multiplier would be 2.4 ($19,180,803.07 ÷ (.75 × $10,-692,067.25)).

However, given that more than 90 percent of Plaintiffs' damage request was pursuant to their losing claim and that claim was far more complex than the others, it is very likely that Class Counsel allocated more than 25 percent of their time to that claim. The question then becomes: how much more? Based on the amount of damages Plaintiffs requested pursuant to their losing claim and its complexity, it is reasonable to assume that Class Counsel spent at least half of their time on that claim. If Class Counsel's compensation is based on these assumptions, the multiplier would be at least 3.6 ($19,-180.803.07 ÷ (.5 × $10,692,067.25)), which is well within the acceptable range for fee awards in complicated class action litigation such as this.

Based on the foregoing, the lodestar method confirms the reasonableness of a 25 percent benchmark award in this case.

## II. *REIMBURSEMENT OF EXPENSES*

Class Counsel also requests $2,406,606.90 as reimbursement for litigation expenses. None of the class members have opposed this request.

After reviewing the documentation Class Counsel has submitted, the Court finds Class Counsel's request for reimbursement of expenses to be reasonable. Their reimbursement request is supported by a detailed accounting and by declarations from independent counsel Jerome Braun and Bruce MacLeod. Therefore, the Court GRANTS Class

Counsel's request for $2,406,606.90 in reimbursement of expenses.

## III. *AWARD OF $100,000 TO THE NAMED CLASS REPRESENTATIVE*

Lastly, Class Counsel requests that the Court award Don Van Vranken, the named class representative, an incentive award of $100,000 for his efforts during this litigation. None of the class members have opposed this award.

■ Whether to reward Mr. Van Vranken for his efforts is within the Court's discretion. *See, e.g., In re Domestic Air Transp.,* 148 F.R.D. at 357–58 (awarding $142,500 to class representatives out of $50 million fund); *In re Dun & Bradstreet,* 130 F.R.D. at 373–74 (awarding $215,000 to several class representatives out of an $18 million fund). The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *See* Richard Greenfield, "Rewarding the Class Representative: An Idea Whose Time Has Come," 9 *Class Action Reports* 4 (1986); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 250 (S.D.Ohio 1991).

■ Here, several of the above factors support Van Vranken's request for an incentive award. Van Vranken's participation lasted through many years of litigation. Furthermore, according to Class Counsel, Van Vranken's testimony at trial was key in rebutting ARCO's "good faith" defense. In exchange for his participation, Van Vranken will not receive great personal benefit. He owns a moderately sized truck stop and his claim makes up only a tiny fraction of the common fund.

However, after reviewing the actual time that Van Vranken spent on the case, the

Court finds that a $100,000 award would be excessive. In his declaration, Van Vranken does not quantify how many hours he spent on the litigation or when he spent them. He merely states that he participated in 49 telephone conferences and five meetings with Class Counsel, attended three pre-trial hearings, had his deposition taken twice, and testified at trial. He further asserts that he made various unspecified out-of-pocket expenditures for gas, occasional meals, and wear and tear on his car during his travels from Fresno to San Francisco, San Jose, and Los Angeles.

After evaluating the time Van Vranken committed to this case, the Court finds that an incentive award of $50,000 is just and reasonable under the circumstances.

## CONCLUSION

For the foregoing reasons, the Court awards Class Counsel the following:

1) $19,180,803.07 in attorneys fees, plus any interest earned thereon since the date judgment was entered.

2) $2,406,606.90 in reimbursement of expenses.

Class Counsel shall place these fees and expenses in a trust account separate from the rest of the settlement funds. Class Counsel may withdraw half of this money immediately, and the other half after the Court has determined that the claims process is completed.

In addition, the Court awards Don Van Vranken $50,000 for his efforts during this litigation. Class Counsel shall disburse this award to Van Vranken immediately.

IT IS SO ORDERED.