STATE of Missouri, ex rel. Stephen
L. BYRD, et al.,

v.

The Honorable Daniel L. CHADWICK,
Circuit Court of Jackson County,
Missouri, Respondent.

No. WD54805.

Missouri Court of Appeals,
Western District.

Nov. 13, 1997.

George A. Barton, Rasmussen & Barton, Kansas City, Herbert Hafif, Larry Sackey, Jeanne A. Sterba, Patricia Lytle, Claremont, CA, for relators.

Brant M. Laue, Lawrence A. Rouse, Use, Hendricks, German, May & Shank, P.C., Kansas City, Dennis E. Egan, The Popham Law Firm, Kansas City, Robert A. Horn, Ackwell, Sanders, Matheny, Weary & Lombardi LLP, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

LAURA DENVIR STITH, Presiding Judge.

Between 1986 and 1994, Network 2000 Communications Corp. contracted with more than 50,000 individuals, designated as independent marketing representatives, to solicit long distance telephone customers for Sprint Communications Co. These independent marketing representatives were to be paid commissions and bonuses based on the long-distance usage of the customers they recruited. On August 17, 1992, fifty-nine independent marketing representatives filed suit against Sprint and Network 2000 ("Defendants") on behalf of themselves and a class of persons similarly situated alleging that Sprint and Network 2000 failed to pay the commissions and bonuses they were due. All fifty-nine of the named plaintiffs were represented by the law firm of Saperstein, Goldstein, Demchak & Baller in Oakland, California, and the Popham law firm in Kansas City, Missouri.

On December 18, 1995, the plaintiffs filed a motion for class certification.[1] Briefing on the class certification issue was complete in December 1996. In the meantime, in August 1996, the parties had begun settlement negotiations with the assistance of a mediator, John Bates. Also in August 1996, three named plaintiffs hired new attorneys, the Law Offices of Herbert Hafif in Claremont, California, and Rasmussen & Barton, L.L.C. in Kansas City, Missouri.

Judge Daniel L. Chadwick ("Respondent") originally scheduled a hearing on the motion for class certification on May 13, 1997. Three days prior to this hearing, on May 10, 1997, Mr. Bates informed Respondent that the Saperstein law firm and counsel for Sprint and Network 2000 were close to reaching a settlement agreement. Therefore, Respondent rescheduled the hearing for June 25, 1997. Shortly before this hearing, Mr. Bates again told Respondent the parties were close to finalizing a settlement, and Respondent continued the hearing to a date "to be determined by the Court."

---

1. The delay in reaching the class certification issue was the result of Sprint's argument that the plaintiffs' claims in this case were subject to arbitration, as were certain related claims between Sprint and Network 2000. In *Byrd v. Sprint Communications Co., L.P.*, 931 S.W.2d 810 (Mo.App.1996), this Court held that the claims in this case were not subject to arbitration.

On Friday, July 18, 1997, the plaintiffs represented by the Saperstein law firm, Sprint, and Network 2000 submitted a Stipulation of Settlement and a proposed Stipulated Order for Preliminary Approval of Stipulation of Settlement. The Stipulated Order certified a temporary settlement class, preliminarily approved the settlement, and designated the Saperstein law firm as class counsel. The named plaintiffs represented by the Hafif law firm and Rasmussen & Barton did not agree to the stipulation and were not parties to the proposed stipulated order for preliminary approval of the settlement. Respondent signed the proposed Order, with one minor correction, on Monday, July 21, 1997. He did so without input from the plaintiffs who were not party to the stipulation.

On July 25, 1997, an additional twelve named plaintiffs terminated the Saperstein law firm and became represented by the Hafif law firm and Rasmussen & Barton. At a hearing on that same day, the plaintiffs represented by the Hafif law firm and Rasmussen & Barton ("Relators") learned that Respondent had signed the proposed Order. Relators objected to the court's preliminary approval of the settlement, but Respondent overruled this objection.

On August 4, 1997, the court mailed notice to approximately 116,000 potential class members, notifying them that a class action had been filed, that a settlement had been proposed, and that the trial court had temporarily certified the class for purposes of settlement. It informed potential class members that they must file a claim form by October 29, 1997, in order to be considered for an award. The notice also advised class members of their option to object to the proposed settlement at the final fairness hearing on November 24, 1997, or to opt out of the class by September 23, 1997. Finally, the notice stated that Sprint would pay a total of $62,200,000, of which $6,469,061 would go to the named plaintiffs, and that class counsel would request $14,000,000 for fees, costs, and expenses. Notice was also published in *The Wall Street Journal* and *USA Today*.[2]

On August 21, 1997, Relators filed an Opposition and Objections to and Motion to Strike Stipulation of Settlement and Suggestions and Memorandum of Points and Authorities in Support of Motions to Maintain a Class Action, Certification of Plaintiffs' Class, Appointment of Co–Counsel for Class Members and Opposition to Settlement. Respondent held a hearing on this motion on September 15, 1997, but ultimately denied Relators' motion. Relators then filed their Petition for Writ of Mandamus, in which they requested that we require the court below to withdraw its July 21, 1997, order certifying a temporary settlement class. We granted our preliminary writ. Relators now request us to make our writ permanent.

In support, Relators point out that the court below failed to hold a hearing of any kind or to allow briefing on the issue of settlement prior to temporarily certifying the class for purposes of settlement and preliminarily approving the settlement agreement. Relators request that this Court vacate the order temporarily certifying a settlement class and direct the court below that it must hold a full evidentiary hearing prior to certification of a temporary settlement class and prior to giving tentative approval to the settlement. They further urge that the notice which was sent to the class was inadequate and argue that the court below should receive input from all parties before sending a new notice to the putative class members.

We believe that the issues raised by Relators can most easily be analyzed if they are grouped into two categories. We will therefore first discuss whether the trial court acted within its discretion in certifying a temporary class for purposes of settlement without making a preliminary determination as to either the fairness of the settlement or whether the proposed class meets the requirements for class certification under Rule 52.08. *See Section III, infra.* Next, we will discuss whether the notice given to the class was adequate. *See Section IV, infra.*

---

2. As of the date Respondent filed its brief, approximately 15,000 claims had been filed and 150 class members had opted out of the class.

## II. STANDARD FOR ISSUANCE OF WRIT OF MANDAMUS

▮ The first issue we must address is whether the issuance of a writ of mandamus is a proper means of addressing the issues raised by Relators. Respondent argues that it is not, and that any error committed by the trial court in certifying the class or approving the settlement can be corrected on appeal. We agree that this is true insofar as Relators ask us to review the proposed settlement and determine whether it is fair and whether it otherwise meets the requirements of Rule 52.08. Those are issues which must first be determined by the trial court and which we will review under an abuse of discretion standard following final resolution of the issues below. *Ralph v. American Family Mut. Ins. Co.,* 835 S.W.2d 522, 523 (Mo.App.1992).[3]

▮ It *is* proper, however, for us to issue our writ where the court has refused to exercise its discretion, or where it has refused to act where it has a duty to act. *State ex rel. Schnuck Markets, Inc. v. Koehr,* 859 S.W.2d 696 (Mo. banc 1993); *Yeager v. Yeager,* 622 S.W.2d 339, 341 (Mo.App.1981). In so doing, we do not direct the trial court as to how it will exercise its discretion, but rather direct it as to what determinations it must make, and then allow it to make those determinations following issuance of our writ. Whether those determinations ultimately prove to be correct will, of course, be before us if the case is appealed following final resolution of the issues in the trial court.

▮ Relators here do argue that the trial court was without authority to certify a class, even for purposes of settlement, without considering whether the class met the requirements of Rule 52.08, that it was required to determine the fairness of the proposed settlement before sending notice to the class, and that it was required to give proper notice to the class before holding a fairness hearing or requiring the absent class members to decide whether to opt out of the class and whether to file a claim, and that it did none of these things. We agree that these issues are prop-

er subjects of mandamus, and we will address them in the remainder of this opinion.

## III. NECESSITY OF PRELIMINARILY DETERMINING WHETHER CLASS MEETS REQUIREMENTS OF RULES 52.08(a),(b)(3), & (e) PRIOR TO CERTIFYING PRELIMINARY SETTLEMENT CLASS

As noted above, Relators argue that the trial court was required to hold a full evidentiary hearing and determine the merits of class certification and the fairness of the settlement before it could give notice to the class of the tentative certification of a class for settlement purposes. Relators elaborate that at this hearing the court should determine whether the prerequisites to class certification under Rule 52.08(a) and (b)(3) have been met; if so, whether the class should be divided into subclasses; and whether preliminary approval of the settlement is warranted. They urge that all of these matters must be determined prior to even tentative approval of a settlement class. Rules 52.08(a), (b)(3), and (e) state:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudica-

---

**3.** Approval of the settlement of a class action is reviewed under the standard set out in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

*Centerre Trust Co. v. Jackson Saw Mill Co.,* 736 S.W.2d 486, 496 (Mo.App.1987).

tion of the controversy. The matters pertinent to the findings include:

 (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

 (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

 (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

 (D) the difficulties likely to be encountered in the management of a class action.

. . . .

**(e) Dismissal or Compromise.** A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

### Rule 52.08.[4]

Respondent argues that nothing in these rules required the trial court to hold a full evidentiary hearing prior to certification of a temporary settlement class and prior to sending notice to the absent class members. To the contrary, it argues, it would have defeated the purpose of settlement if the court were required to reach the merits of these issues before it could certify a temporary settlement class. It elaborates that it is, in part, the very uncertainty of certification that gives both parties the impetus to settle; if the court had to decide certification issues before it could consider settlement, then the party prevailing on that issue might well lose the incentive to settle. Certainly, the dynamics of the litigation would change dramatically. It fears that, as a result, if we were to require that certification occur before settlement on behalf of the class, we would effectively prohibit use of the temporary settlement class device as a means of

efficiently resolving otherwise complex and lengthy class action litigation.

**A.** *The United States Supreme Court Decision in Amchem Permits Use Of A Temporary Settlement Class But That Class Must Also Meet Class Certification Requirements.*

We agree with Respondent that use of temporary settlement classes is beneficial and has salutary effects on the resolution of class action litigation. In so doing, we recognize that neither Missouri's class action rule, Rule 52.08, nor the substantively identical provisions of the federal class action rule, Fed.R.Civ.P. 23, expressly address the propriety of use of the temporary settlement class device.

■ Nonetheless, as the United States Supreme Court recently noted in *Amchem Products, Inc. v. Windsor*, —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997),[5] "Among current applications of Rule 23(b)(3), the 'settlement only' class has become a stock device." *Id.* at ——, 117 S.Ct. at 2247. *Amchem* specifically approved of the use of a temporary settlement class in order to facilitate settlement. The Court recognized that it would be counterproductive, and unrealistic, to simply ignore the fact that a settlement had been reached in deciding whether a purported class met the requirements of Rules 23(a) and (b), for a case might be appropriate for class certification for the purposes of settlement yet not be appropriate for class certification for the purposes of trial. In this sense, the requirements for certification may be easier to meet in the settlement context.

In so doing, however, *Amchem* emphatically rejected those cases holding that a settlement class can be finally certified without a judicial determination that the settlement class meets the requirements of Rules 23(a) and (b)(3). It stated that the requirement in Rule 23(e) that the court approve the settle-

---

**4.** A complete version of Rule 52.08 is attached to the end of this opinion.

**5.** While the issue we must resolve is whether the trial court acted properly in certifying a temporary settlement class under Missouri Rule 52.08,

we will rely heavily on cases interpreting the provisions of Fed.R.Civ.P. 23 in determining the issues in this case. *See, e.g., Ralph v. American Family Mut. Ins. Co.*, 809 S.W.2d 173, 174 (Mo. App.1991).

ment and give notice of the proposed settlement to the purported class:

was designed to function as an additional requirement, not a superseding direction, for the "class action" to which Rule 23(e) refers is one qualified for certification under Rule 23(a) and (b).... Subdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of the class representatives. That dominant concern persists when settlement, rather than trial, is proposed.

*Amchem,* —— U.S. at ——, 117 S.Ct. at 2248.

*Amchem* offers an extensive analysis of the reasons for this rule. In particular, it notes, the focus of Rule 23(a) and (b) is different from the focus of Rule 23(e). Rule 23(a) focuses on basic prerequisites for certification of the class, such as the adequacy of the class representatives, numerosity of the class members, commonality of the claims of the class members, and whether the claims of the class representatives are typical of those of the absent class members. By contrast, Rule 23(b)(3) focuses on whether common issues predominate among the claims of all class members. The required predominance cannot be based simply on the shared desire of class members to reach a favorable resolution of their claims. Rather, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at ——, 117 S.Ct. at 2249. It is this "cohesion that legitimizes representative action in the first place." *Id.*

*Amchem* did concede that the fairness inquiry which the court conducts under Rule 23(e) overlaps to some extent with the purposes of Rules 23(a) and (b).[6] *Amchem* was adamant, however, that Rule 23(e) merely supplements, rather than supplants, those sections of the Rule, and that the mere de-

termination under Rule 23(e) that there is a common interest in a fair compromise is not in itself an adequate basis for the court to certify the class. *Id.* Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation and Rule 23(b)(3)'s requirement of a predominance of common questions are as essential to certification of a class action for purposes of settlement as they are to certification of a class action for purposes of trial. *Id.* at —— ——, 117 S.Ct. at 2247–50. Those parts of the class action rule, which are:

designed to protect absentees by blocking unwarranted. or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Id.* at ——, 117 S.Ct. at 2248.

**B. *Missouri Would Follow Amchem in Permitting Certification of Temporary Settlement Classes, But Like Amchem Would Require the Trial Court to Determine At Some Point Whether the Requirements for Certification Were Met.***

■■ Missouri's Rule 52.08 is identical to Federal Rule 23, and we have previously held that interpretations of Rule 23 are considered by this Court in interpreting Rule 52.08. *Ralph,* 809 S.W.2d at 174. We wholeheartedly agree with the interpretation of Fed. R.Civ.P. 23 in *Amchem,* and find that decision fully applicable to Missouri Rule 52.08. Like *Amchem,* we thus approve use of the temporary settlement class device. In so doing, we similarly caution that Missouri Rule 52.08(e)'s requirement that the court

---

6. In determining whether the settlement is fair, reasonable, and adequate under Rule 23(e), numerous courts have noted that a trial court should consider: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives and absent class members. *Ahearn v. Fibreboard Corp.,* 162 F.R.D. 505, 528 (E.D.Tex.1995) (applying factors adopted by Fifth Circuit in *Reed v. General Motors Corp.,* 703 F.2d 170 (5th Cir.1983)). *See also Lachance v. Harrington,* 965 F.Supp. 630, 637 (E.D.Pa.1997); *Lake v. First Nationwide Bank,* 156 F.R.D. 615 (E.D.Pa.1994) (applying nine similar factors adopted by Third Circuit in *Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975)).

approve any settlement is an additional, not a superseding, requirement. In order to approve settlement of a class claim, the court must also find that the requirements of Rules 52.08(a) and (b) are also met.

Here, the trial judge certified a temporary settlement class under Rule 52.08(b)(3) without making any apparent determination as to whether the requirements of Rule 52.08(a), (b)(3), or (e) have been or could be met in this case. All parties recognize that, if we determine to follow *Amchem,* as we have now done, then such a determination must be made by the judge below before he can finally certify the class or approve the settlement. The parties differ, however, as to when the judge must make those determinations, and whether he has erred in failing to make them before certifying a temporary settlement class and sending notice to the class of the proposed settlement.

Respondent argues that most cases actually indicate a preference for determining whether the requirements of Rule 23(a) and (b)(3) are met at the final fairness hearing, for at that point the court can consider input received from absent class members who have responded to the notice of the proposed settlement. And, it assures us, the court is planning to address these issues, under Rule 52.08(a) and (b)(3), at the fairness hearing scheduled for November 24, 1997.

While this may be the case, we are unsure as to the basis of that assurance. The court's order only indicates that it plans to consider the fairness aspects of the settlement at that hearing; certainly neither the parties nor the class have received any notice that the court also intends to consider issues relating to the class certification question, and there is no provision in place for the parties to brief these issues prior to the fairness hearing. Respondent suggests that the court can adequately evaluate the issues regarding certification and settlement based on the briefs filed by the parties in 1996 and early 1997 addressing the merits of certifying the class. We note, however, that those briefs do not address the propriety of certification of a settlement class; they address solely the issue whether a class should be finally certified for litigation purposes.

The important difference between temporary certification of a settlement class and certification of a class without regard to settlement is highlighted by the positions of the respective parties here and in the court below. While Defendants support certification for purposes of settlement only, the only briefs they filed with the court below prior to certification were their earlier briefs opposing certification for purposes of litigation, and the stipulation of settlement itself states that Defendants will continue to oppose certification if the settlement is not finalized. Conversely, Relators, who are named plaintiffs in the underlying action, have joined in briefs favoring certification of a class for trial. After they found out about the certification of a temporary settlement class, and after notice had been sent to the class, however, they filed briefs opposing certification of this settlement class because they believe that the terms of the settlement are inadequate and that a conflict of interest exists between some of the class representatives and some of the absent class members. They indicate that subclasses are required.

Clearly, the briefs filed by the parties dealing with certification in the absence of settlement are inadequate to address the issues raised by the current attempt of Defendants and some plaintiffs to certify for purposes of settlement only. The limited briefing of these issues after notice had been sent only partially rectified this problem, and it is evident from the court's order that the issue was not given the open-minded consideration as it would have been given if the issue had been addressed in briefs filed prior to the signing of the certification order. Of course, this problem could be resolved by simply ordering the parties to fully brief these issues for the trial court and ordering the court to take up and resolve the issues, including issues relating to certification under Rules 52.08(a) and (b)(3), at the November 24, 1997, fairness hearing. Relators say that this would not be an adequate remedy, however. They say that the trial court was required to consider these issues prior to certification of a temporary settlement class, and must hold a full evidentiary hearing, and that its failure to do these things requires us

to make our writ permanent and to remand for a full evidentiary hearing on the issues of certification and fairness.

We therefore turn to the issue of when the court must make the Rule 52.08(a), (b)(3) and (e) determinations, and of what consequences must follow from a failure to follow the proper timetable in making these determinations.

### C. When Should the Judge Determine Whether the Proposed Class Meets the Requirements for Certification for the Purposes of Settlement and Whether the Proposed Settlement is Fair.

■ As noted, Relators say that the trial court's failure to make its Rule 52.08(a) and (b) determinations prior to its certification of a temporary settlement class is fatal, and that we should remand for a full evidentiary hearing on these issues. Respondent counters, quite correctly, that in *Senn v. Manchester Bank of St. Louis*, 583 S.W.2d 119, 132–33 (Mo. banc 1979), the Missouri Supreme Court specifically rejected the argument that the court must hold a full evidentiary hearing before determining class certification. *Senn* made clear that the court can hold such a hearing, but that in its discretion it may resolve the issue based on briefs and affidavits, and other evidence submitted to it. That ruling governs here.

Respondent also argues that where, as here, the parties have presented the trial court with a proposed settlement and have stipulated to class certification for the purposes of settlement, the court should delay its Rule 52.08(a) and (b) determinations until after the class has been given notice of the proposed settlement and had an opportunity to opt out, object, or file claims.

Neither Rule 52.08 nor Fed.R.Civ.P. 23 directly addresses *when* the court must first consider whether the class is proper for certification as a settlement class and whether the other requirements of the class action rule are met. For that reason, there has been some confusion on this issue with a resulting wide variance in approach by courts and commentators.[7]

For instance, the judge in *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F.Supp. 1379 (D.Md.1983), indicated that he was unsure whether or not he was required to make preliminary findings as to the requirements of Fed.R.Civ.P. 23 before certification of a temporary class, but that "[t]o the extent they are required, the Court finds the Temporary Settlement Class, as a temporary settlement class, fulfills all of the prerequisites of Fed.R.Civ.P. 23(a) and Fed.R.Civ.P. 23(a)(3) [sic]." *Id.* at 1390 (footnotes omitted).

Other courts have assumed that they must find that the class meets the requirements of Rule 23 before certifying a temporary settlement class. For example, in *Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D.Pa. 1994), the parties reached a settlement prior to certification of a class and requested the court's preliminary approval of the proposed class and that notice be sent to the putative class members. Prior to giving preliminary approval to the class or sending notice, the court held a hearing on these issues. It issued an opinion following the hearing in which it noted that in order for the action to be maintained as a class action, the plaintiffs had to meet the requirements of Rule 23(a). It then analyzed the requirements of that rule based on the record before it and in light of the settlement, and determined that those requirements were met. *Id.* at 622–25.

*Lake* similarly considered whether the requirements of Rule 23(b)(3) were met and found that they were, and approved the proposed class as defined for the purpose of settlement. *Id.* at 625–26. It then considered whether the proposed settlement was fair, adequate and reasonable. Based on this analysis, the court concluded "at least preliminarily, that the settlement proposed is fair, adequate, and reasonable." *Id.* at 626–27. The court then considered the input of the parties on the issue of notice, and ordered such notice to issue and to inform the class that a fairness hearing would be held on a

---

7. *Amchem* does not address the issue, although from the Supreme Court's factual statement in that case it is evident that most issues were not considered in that case until the fairness hearing. We do not know what the trial court considered prior to that time.

date certain at which the court would consider whether to give final approval to the settlement. *Id.* at 628. A similar approach was taken in *In Re Baldwin–United Corp.,* 105 F.R.D. 475 (S.D.N.Y.1984) (court made preliminary analysis under Rules 23(a), (b)(3), and (e) without prejudice to later final determination of these issues at fairness hearing).

By contrast, the leading commentator in the area, Professor Newberg, suggests that the temporary settlement class simply acts as "a tentative assumption indulged in by the court to facilitate the amicable resolution of the litigation, rather than as some sort of conditional class ruling under Rule 23 criteria." 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.27 at 11–50 (3d ed 1992). Because the certification is only tentative, and because the court will be free to rule against certification once it has received input from the class at the fairness hearing, Newberg suggests that it is not necessary to make a decision on certification before sending out notice to the class. Rather:

> The actual class ruling is deferred in these circumstances until after hearing on the settlement approval, following notice to the class. At that time, the court in fact applies the class action requirements to determine whether the action should be maintained as a class action and whether the class settlement should be approved. Viewed in this light, a court ruling creating a temporary settlement class at the request of the parties is not a formal class ruling.

*Id.* at 11–50.

A number of courts have agreed. Thus, in *County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1422 (E.D.N.Y.1989), the court specifically noted that the Second Circuit Court of Appeals had held that "the district court has a heightened responsibility to review a pre-certification settlement because of 'the possibilities of collusion or undue pressure by the defendants on would-be class representatives.'" *Id.* at 1424. The court continued by stating that, while it was "aware of this responsibility[, i]t will be exercised in considering the information obtained at the fairness hearings." *Id.*

Similarly, *Prezant v. De Angelis,* 636 A.2d 915 (Del.Supr.1994), held that:

> We recognize the beneficial aspects of permitting temporary settlement classes. They allow several steps of litigation to be collapsed into one. Class certification pursuant to Rule 23(c)(1) is deferred until the settlement hearing, upon notice to the class. Class certification proceedings, if contested, can be time consuming and costly. Resources that would otherwise be allocated to such proceedings can instead be used to achieve a resolution of the entire dispute through settlement.

636 A.2d at 922–23. For these reasons, *Prezant* held that "a formal class ruling may be deferred until the settlement hearing. However, we believe that such a ruling must be made before a settlement can be approved." *Id.* at 923. *See also In re Armored Car Antitrust Litigation,* 472 F.Supp. 1357, 1367 (N.D.Ga.1979), *aff'd in part, rev'd in part on other grounds,* 645 F.2d 488 (5th Cir.1981) (appears to have waited to evaluate settlement until hearing following notice of conditional approval).

Other courts and commentators have taken an intermediate approach. They recognize that the Rule itself does not directly address the issue and thus leaves much to the trial judge's discretion. They further recognize that to hold a full hearing on the merits prior to the fairness hearing would be wasteful and duplicative, and might inhibit meritorious settlements. Many have nonetheless preliminarily reviewed the proposed settlement and considered such issues as whether the class representatives had fairly represented the class in negotiations, whether the proposed settlement was sufficiently fair to submit to the class, and what notice should be given to the class of the proposed settlement. They thereby explicitly give preliminary consideration to the kinds of factors relevant to the final fairness determination under Rule 23(e), and *sub silencio* consider factors relevant under 23(a) as well. *See, e.g., In re Dun & Bradstreet Credit Serv. Customer Litig.,* 130 F.R.D. 366 (S.D.Ohio 1990) (court based preliminary approval of settlement on familiarity with the problems and issues presented in cases and character of negotiations, and con-

cluded that the proposed settlement agreement was neither illegal nor collusive, and that it was the product of arms-length negotiations); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 323 F.Supp. 364, 374 (E.D.Pa.1970), *aff'd & modified on other grounds, Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30 (3rd Cir.1971) ("Although no final determination of the reasonableness of the settlement need be made at the present time, this Court must satisfy itself that such settlement is sufficiently fair and reasonable for submission to members of the prospective class for their approval or disapproval.").

While an early version of the *Manual for Complex Litigation* disapproved of temporary settlement classes, the current version of the Manual takes this sort of intermediate approach. It states:

> *Approval of class settlements involves a two-step process. First, counsel submit the proposed terms of settlement and the court makes a preliminary fairness evaluation. In some cases this initial evaluation can be made on the basis of information already known to the court, supplemented as necessary by briefs, motions, or informal presentations by the settling parties. The court may want to hear not only from counsel but also from the named plaintiffs, from other parties, and from attorneys who did not participate in the negotiations.*

Federal Judicial Center, Manual for Complex Litigation § 30.41 at 236–37 (3d ed.1995) (emphasis added).

There is substantial merit to giving at least some attention to these issues prior to sending notice to the class, as the Seventh Circuit inferentially recognized when it stated:

> Given the momentum that, as we noted earlier, a settlement agreement acquires once it has been negotiated, the district judge might have been well advised to hold a brief evidentiary hearing before giving preliminary approval of the settlement and issuing notice of it to the class.

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir.1987). The Seventh Circuit nonetheless affirmed the decision of the district court approving the settlement, stating that there is no ironclad requirement that such a preliminary hearing be held, and its omission in this case was not a reversible error. *Id.* In so ruling, however, the appellate court cautioned that it might not affirm in the absence of a preliminary review of the proposed settlement:

> if the case for final approval of the settlement were weaker than it was in this case and it appeared that the final approval was due to the momentum generated by a preliminary approval based on inadequate evidence.

*Id.* at 685. *See also In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1133 (7th Cir.), *cert. denied sub nom., Oswald v. General Motors Corp.*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979).

A similar approach was taken in *In Re Traffic Executive Ass'n–Eastern Railroads*, 627 F.2d 631 (2d Cir.1980). The district judge in that case sent out a notice of the proposed settlement to the class even though his preliminary review did not convince him it was fair. He ultimately disapproved the class after the parties had gone through the expense of notice and hearing. The Second Circuit affirmed, but in so doing stated:

> In view of Judge Bartels' unhappiness with the proposed settlement, *it might have been better had he not permitted the Rule 23(e) notice to be sent out.* However, the granting of permission is not tantamount to a finding that the settlement is fair and reasonable. *It is at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.*

*Id.* at 634 (emphasis added).

### D. *We Require A Preliminary "Probable Cause" Hearing Prior to Approval of a Temporary Settlement Class.*

We concur in the approach taken by the cases which hold that the trial court in effect has a "gatekeeper" role in reviewing the proposed settlement before preliminarily approving it and sending out notice to the class. While not all cases have required the court to

explicitly perform this role, we think that in most cases it is likely the judge has undertaken this type of preliminary analysis before permitting the parties to undertake the time-consuming and expensive process of notice to the class.

The reasons why a court should and would do so are self-evident: a court should not give even tentative approval to a settlement which is patently unfair or if the court suspects collusion in the negotiation of the settlement. Similarly, if the record before the court indicates that the proposed class would not be able to meet the requirements of Rule 52.08(a) or (b)(3), or that the settlement would be otherwise unfair, then it would waste the time and resources of the court, parties, and putative class, and would simply confuse absent class members, if the court gave the class notice of a proposed settlement which it could not ultimately approve. The court has an inherent duty to avoid unnecessarily confusing the class or adding expense by giving preliminary approval to a class which it is evident cannot be finally certified because it cannot meet the requirements of Rule 52.08.

On the other hand, there would be no point in the trial court making a final determination of fairness before receiving objections and other input from absent class members, and its decision on the merits of certification may be affected by the number and kind of objections and the number of opt-outs made or claims filed by the absent class members. Moreover, there would be little point to settlement if the court had to, in effect, conduct a hearing on the merits before tentatively certifying a class.

In balancing these considerations, we conclude that, prior to certifying a temporary settlement class, the trial court should first conduct a preliminary examination of the record before it and make a preliminary determination as to whether it appears that a settlement class should be tentatively certified. We emphasize that this determination is and will be only preliminary, and that, in the words of the Second Circuit, "[i]t is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d at 634. In light of *Amchem*'s determination that a settlement class must also meet the requirements of Rule 23(a) and (b)(3), however, we hold such a preliminary "probable cause" review should also be made as to whether it appears the settlement class can meet the requirements of those sections.

Thus, for example, in this case, the trial court should have reviewed whether it appeared that class counsel was adequate, that the named plaintiffs were adequate representatives of the class, that there is no apparent conflict of interest between the representatives and the class or among the class, that the settlement on its face appears to be fair and to have been the result of arms length negotiations,[8] that it appears that the named plaintiffs' claims are typical of those of the class, and that it appears that common issues will predominate. We emphasize that we are not requiring the court to hold an evidentiary hearing on these issues, although it can do so if it finds it useful. The court must, however, review the record before it, and determine whether, based on that record, it appears that the settlement is fair and that certification may ultimately be approved. It appears it did not do so here.

Indeed, here, while the parties had previously briefed issues related to certification under Rule 52.08(b)(3), they had not done so in the context of settlement. When the pro-

---

**8.** In this regard, Relators argue that the fact that up to 25% of the named plaintiffs do not approve of the proposed settlement indicates that it is not fair to some class members, that there is collusion, or that the settlement benefits some class members at the expense of others, and in itself precludes approval of the proposed settlement. The fact that a large number of named plaintiffs do not concur in the settlement proposal, and the reasons why they do not believe that the settle-ment should be approved, are of course very relevant factors for the court to consider at the fairness hearing. They do not preclude approval of the settlement, however. *See, e.g. Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987); *Holden v. Burlington Northern, Inc.*, 665 F.Supp. 1398, 1421 (D.Minn.1987); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 624 (N.D.Cal. 1979), and cases cited therein.

posed settlement was reached, it was supported only by the defendants and by those named plaintiffs who were represented by the Saperstein law firm. It was not supported by Relators, who are named plaintiffs who were once represented by the Saperstein law firm, but who are now represented by the Hafif law firm and Rasmussen & Barton. Relators note that the trial court approved of the proposed settlement without giving them notice of the proposal or an opportunity to be heard on that issue, and allege this was error. In fact, the proposed settlement was filed on a Friday and was approved the following Monday.

■ We agree that where, as here, not all represented parties joined in the proposed settlement, it was improper for the trial court to give even preliminary approval to it without first providing the other parties with an opportunity to indicate their support or opposition to settlement and the reasons for their position. The court was not required to hold a hearing or to allow briefing on the issue if the record before the court was adequate for the court to consider the issues before it. To the extent that issues regarding the fairness of the settlement were not addressed in prior documents or pleadings, however, the court should have permitted the parties to provide the court with a record adequate to allow the court to make a preliminary considered determination of whether to certify a temporary settlement class.

■ Finally, we re-emphasize that, in making its preliminary determination, the court is only considering whether there is "probable cause" to believe that the class can be certified for the purposes of settlement; it is not making a determination as to whether the case could be maintained as a class action if the settlement fell through and litigation were required, nor is it making a final determination of certification for purposes of settlement. As *Amchem* and many other courts and commentators have noted, cases which could not pass the requirements of Rule 23(a) or (b)(3) if considered without regard to settlement may be able to meet the requirements for certification once relieved of manageability issues, and other issues, which are relevant only if the case were to be tried.

### E. *Whether Failure to Undertake a Preliminary Review Under Rules 23(a), (b)(3), and (e) before Certifying a Temporary Settlement Class Requires Remand.*

■ Although the trial court failed to follow the procedure we now require, we do not agree with Relators that this automatically means that we must vacate Respondent's order certifying a temporary settlement class and remand for a completely new determination of this issue.

As should be evident from our discussion above, one of the key purposes of requiring the trial court to undertake a preliminary review of the proposed settlement class is to ensure that the class is not unduly confused and its resources are not unnecessarily wasted by giving notice of a proposed class and settlement which bear no chance of final certification. Here, however, the notice has already gone out and the expense has already been incurred. To now require that the court make a preliminary determination of the Rule 52.08 issues and then send out a new notice would cause greater, not less, cost and confusion to the class. Moreover, because this case comes before us on a writ, before the holding of the fairness hearing, there is still an opportunity for the court to rule on the Rule 52.08 issues, and to receive adequate briefing on all of those issues, before it makes a final certification ruling.

Therefore, while in future cases the courts should and must undertake a preliminary "probable cause" review of a proposed settlement class before certifying it, here we would be inclined to find the error non-prejudicial if the failure to hold the preliminary review were the only problem with the trial court's actions below.

Relators argue, however, that there is an independent basis to vacate the court's temporary settlement order. They state that, even if the court properly certified a temporary settlement class, the notice it sent to the class was inadequate, and the court erred in failing to give Relators input into the content of the notice. They argue that these deficiencies cannot be corrected at the fairness

hearing, but require issuance of a new notice following hearing and input from all parties. We address these issues below.

## IV. *WHETHER THE NOTICE TO THE CLASS WAS INADEQUATE*

 There is broad agreement as to the basic test to be applied in determining the adequacy of a notice of class certification. This test is drawn from the language of Rule 23(c)(2) which states:

> In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

Rule 23(c)(2). "While these requirements are absolute, they do not purport to be exclusive." *In Re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1104 (5th Cir.1977). The notice must also satisfy due process, which requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Therefore, the notice "must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member." *Nissan,* 552 F.2d at 1104 (citations omitted). *Nissan* goes on to explain:

> Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action. The standard then is that the notice required by

subdivision (c)(2) must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.

*Id.* at 1104–05.

The parties appear to agree that the notice which the court sent to the absent class members in this case contained the basic elements required for giving notice of the fact of certification of a settlement class under Rule 23(c)(2), including notice of the right to opt out, the need to file a claim, and the basic consequences of failing to either opt out or file a claim. Relators argue, however, that the notice did not give the absent class members adequate information about the substance of the proposed settlement so that they could make an informed decision as to whether to object to the settlement and whether to opt out of the class.

 Rule 23(e) governs settlement of a class action. That rule provides:

> A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class as the court directs.

Rule 23(e). While Rule 23(e) imposes a lower standard than notice under Rule 23(c)(2), *Gottlieb v. Wiles,* 11 F.3d 1004, 1012 (10th Cir.1993), the notice must still satisfy due process. Therefore, the notice must "fairly apprise the prospective members of the class of the terms of the settlement and of the options that are open to them in connection with [the] proceedings." *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072 (2d Cir.1995); *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir.1982), *cert. denied sub nom., Coyne v. Weinberger,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *Boggess v. Hogan,* 410 F.Supp. 433, 442 (N.D.Ill.1975). The information need only be general in nature, and can refer the putative class members to the court or counsel for detailed information. *Grunin,* 513 F.2d at 122.

### A. Adequacy of Information Given About Amount of Individual Recovery.

■ Relators most strongly argue that the notice was defective because it failed to give the absent class members adequate information about the substantive terms of the settlement. In particular, while it informed the absent class members that the total amount of the settlement was to be $62,200,-000, it nowhere indicated the number of putative class members who might file a claim, the formula which would be used to calculate recovery, or the range of recovery which any individual class member might expect depending on how many claims were filed. Relators say that, without this information, the recipients of the notice had no way to evaluate its fairness, much less to decide whether it was even worth their time to fill out a claim form.

We agree with Relators that the notice was grossly inadequate in this respect. The notice did tell the putative class members of the total amount of the settlement, the amount which would go to the named plaintiffs, and the amount requested by counsel. It nowhere, however, estimated the number of persons in the class, the total potential number of claims, the number of claims which it was estimated would be filed, the formula for determining each class member's recovery, or any other information by which the absent class members could determine their potential amount or range of recovery.

Numerous courts have recognized that an adequate notice should contain information about either the amount or the range of recovery. *See, e.g. Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374 (9th Cir.1993), *cert. denied sub nom, Reilly v. Tucson Elec. Power Co.,* 512 U.S. 1220, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994) ("aggregate amount of the proposed settlement and the formula for computing recoveries was all that was required"); *Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1177–79 (9th Cir.1977) (notice was adequate where it indicated aggregate amount available to all claimants and a formula for determining individual recovery); *Boggess v. Hogan,* 410 F.Supp. 433, 442 (N.D.Ill.1975) (A notice must reasonably ap-

prise class members of the terms of the settlement, including "the best available information concerning fees and expenses together with an estimated range of unitary recovery"). *But see Gottlieb v. Wiles,* 11 F.3d 1004, 1013 (10th Cir.1993) (notice was not inadequate because it failed to give class exact formula by which recovery would be determined where it otherwise adequately apprised them of terms of settlement).

Professor Newberg also teaches that one of the three elements of an adequate notice of class certification for purposes of settlement is the formula for determining the amount to be paid to absent class members. More specifically, he states that an adequate notice should describe the following three elements of a settlement:

1. A statement of the settlement consideration to be paid;
2. A formula for distribution of the settlement fund; and
3. The formula and method for distribution of attorneys' fees and expenses.

**Newberg, § 8.32 at 8–106.**

While the notice at issue here sets out the amount paid in total for the settlement, it does not contain a formula for determining distribution of the settlement fund or an amount or range of amounts each class member may expect to receive. We find that the absence of this information from the notice rendered it inadequate, for without it the absent class members had an inadequate basis on which to determine whether they should opt out of the class, had no basis of determining whether it would be worth their efforts to file a claim, and had no means of judging the reasonableness of the settlement.

### B. Adequacy of Information Given About Premiums Paid to Class Representatives.

■ Relators also argue that the record contains no evidence as to why substantial premiums are being paid to the class representatives, and emphasized at oral argument the failure of the notice to adequately inform the absent class members about these premiums. They remind us that a substantial burden falls upon the proponents of a settle-

ment to demonstrate the fairness of giving large premium payments to the named plaintiffs or to justify other preferential treatment of the named plaintiffs.[9]

We agree that it is nowhere explained in the record before us why, under the stipulation for settlement, two of the named plaintiffs will receive a premium of $100,000, four will receive no premium at all, and the remainder will receive a premium of $50,000 each. Nothing explains why some named plaintiffs receive more money than do others, nor can we determine any reason why one named plaintiff who apparently will receive nothing on his underlying claim will nonetheless receive a $50,000 premium. These details of the premiums and whether they are deserved are for resolution by the trial court at the fairness hearing, however. It can, and must, sort out why such large and disparate premiums are being paid, premiums far larger than those apparently approved for named plaintiffs who have taken an active part in other litigation.[10]

As this case is before us on a writ, we are concerned not with the amount of the premiums or their method of calculation, but rather with whether the failure to mention the premiums in the notice to the class made the notice deficient. Respondent argues that the premiums were adequately mentioned in the portion of the notice which stated:

> The amount that each Named Plaintiff receives is based upon his or her proportionate share of the personal and downline customers attributed to each of them and their contributions to the prosecution of the litigation.

This, in combination with the mention elsewhere in the notice of the total $62,200,000

settlement amount, was adequate to describe the premiums being received, respondents argue.

We disagree. The language used in the notice did not distinguish how much of the $6,469,061 being paid in settlement of the named plaintiffs' claims was calculated according to the formula applied to the remainder of the class, and how much was a premium or bonus being paid simply on account of the named plaintiffs' status as such. It nowhere informed the class that all but four of the named plaintiffs would in fact receive $50,000 or $100,000 over and above the amount received in settlement of their underlying claim according to the formula which would be applied to the remainder of the class.

To the contrary, the language used in the notice, by stating that any amounts paid over and above the amounts for the underlying claims represented reimbursement of "contributions" of the class representatives, implied that the class representatives had contributed either capital or labor to the suit. While it may be true that they did so, nothing in the record before us so indicates. This language was misleading.

We also find it curious that the notice assumed a 50% claim rate in determining the potential amount of the named plaintiffs' recoveries and specified the exact amount of recovery which the named plaintiffs would receive. Yet, as discussed above, the notice did not even give the absent class members a formula for determining their potential range of recovery, and made it clear that their total recovery would depend on the number of claims filed out of an unknown total of potential claimants; apparently, this was not true

9. *See, e.g. Holmes v. Continental Can Co.,* 706 F.2d 1144 (11th Cir.1983) (substantial burden to show fairness of settlement that provides preferential treatment for named plaintiffs); *In re General Motors Corp. Pick–Up Truck Fuel Tank Litig.,* 55 F.3d 768, 808 (3rd Cir.), *cert. denied sub nom., General Motors v. French,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995) ("One sign that a settlement may not be fair is that some segments of the class are treated differently from others.").

10. *See, e.g., Lachance v. Harrington,* 965 F.Supp. 630 (E.D.Pa.1997) (three class representatives received incentive awards of $1,000 each); *In re Catfish Antitrust Litig.,* 939 F.Supp. 493

(N.D.Miss.1996) (four named plaintiffs each received $10,000 incentive award); *In re Chambers Development Securities Litig.,* 912 F.Supp. 852 (W.D.Pa.1995) (class representatives received $2,500 each); *In re Dun & Bradstreet Credit Serv. Customer Litig.,* 130 F.R.D. 366 (S.D.Ohio 1990) (two named plaintiffs received $55,000 and three named plaintiffs received $35,000). *Cf. Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294 (N.D.Cal.1995) (finding that requested incentive award of $100,000 was excessive based on actual time spent on case, and instead awarding $50,000).

of the named plaintiffs. Moreover, the large size of the named plaintiffs' recovery may have misled the rest of the class to believe that they would also recover sums of similar substance, an assumption which in the vast majority of cases would not be accurate.

■ To avoid being misleading, and to give the absent class members an adequate understanding of the merits of the proposed settlement, the notice should have informed the putative class members of the size of the premiums the named plaintiffs would receive, although details of the reasons why the named plaintiffs should receive a premium are not required unless the parties agree to include them. If a different and fixed formula was being used to calculate their recovery, as appears from the fact that a set amount of recovery was stated in the notice even though no one could yet know how many claims would be filed, then the other class members were entitled to this information also.

### C. Attorneys' Fees to Class Counsel.

■ Relators also argue that the court should have held a hearing on the request for attorneys' fees, noting that it is substantial and suggesting that its size indicates that the settlement is unfair or the product of collusion. Again, these were issues for preliminary consideration by the trial court at the time certification is requested prior to notice, and is an issue to be fully explored at the fairness hearing. We cannot resolve this issue as a part of this writ proceeding.

■ In order to give guidance to the trial court on remand, however, we note that many cases have noted that the court is not obligated to grant class counsel the total fee they request. The court should consider the percentage of recovery requested, the size of the total recovery on behalf of the class and the time and effort of the attorneys, as well as other factors, in figuring a fee. A fee of 20–25%, such as is requested here, has been approved in many cases as a "benchmark" for recovery. *See, e.g., Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied sub nom., Reilly v. Tucson Elec. Power Co.,* 512 U.S. 1220, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994); *In re Catfish*

*Antitrust Litig.,* 939 F.Supp. 493, 501 (N.D.Miss.1996); *Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 299 (N.D.Cal. 1995).

■ Most of those cases, however, involved a smaller total sum of recovery. Where the size of the recovery is large, as it is here, then some courts have held that the percentage allocated to attorney's fees should be proportionately smaller. *See Lachance v. Harrington,* 965 F.Supp. 630, 649 (E.D.Pa. 1997). The court may also check the fairness of the proposed award by comparing it to the amount to which counsel would be entitled if their fee were figured on an hourly basis. *Van Vranken,* 901 F.Supp. at 298.

■ Courts have also considered the size of the award and the method of its calculation in determining the fairness of the settlement. Some of these courts have noted that a fee which was negotiated as part of the settlement itself should be looked at more carefully to ensure it was negotiated at arms length and that the size of the fee did not dictate the size of the settlement, rather than visa versa. In this case, for instance, the court should make certain that the amount of the settlement is fixed and will remain the same even if class counsel's fee is reduced in amount, and that the attorneys are not benefiting at the expense of the class. *See, e.g., Evans v. Jeff D.,* 475 U.S. 717, 725–26, 106 S.Ct. 1531, 1536–37, 89 L.Ed.2d 747 (1986); *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litig.,* 55 F.3d 768, 801–04 (3rd Cir.), *cert. denied sub nom., General Motors Corp. v. French,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995); *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 526 (1st Cir.1991); *Cisek v. National Surface Cleaning, Inc.,* 954 F.Supp. 110, 110–11 (S.D.N.Y.1997).

### V. ACTION TO BE TAKEN IN TRIAL COURT

Due to the inadequacies in the notice to the class, we must make our writ permanent and order new notice to be given to the class. Because new notice must be given, the court below should take advantage of the new opportunity to undertake a preliminary review

of the proposed settlement and certification under the standard set out above.

As noted earlier, the court need only determine if there is "probable cause" to believe that the settlement is fair and that the proposed settlement class may ultimately be found to meet the requirements of Rule 52.08(a) and (b)(3) at the fairness hearing. All represented parties should be permitted input into these issues. The issues may be resolved based on the record and on the briefing of the parties, but the trial court has the discretion to hold a limited hearing to obtain additional evidence if it finds it necessary to its decision.

■ In reaching its preliminary decision, the court may consider the objections raised by various parties to the size of the premiums, the size of the settlement, its method of determination, the amount of attorney's fees requested, whether there is any support for such an extremely large award or whether the attorneys might better request a smaller percentage of such a large recovery, and other issues. The court could require the parties to modify the proposed settlement if it finds that fairness or the requirements of Rules 52.08(a) or (b)(3) manifestly so require.

■ If the court determines to temporarily certify the class for purposes of settlement, as now constituted or as modified following the court's review of the record, then it should obtain input from all represented parties as to the content of the notice, and should at a minimum rectify the errors noted above.

■ At the ensuing fairness hearing, it should give heightened scrutiny to those portions of the Rule designed to protect absent class members, and should ensure that the proposed class meets all relevant requirements of Rule 52.08(a) and (b)(3) in making a final determination whether to certify the class for purposes of settlement.

Writ made absolute.

All concur.

## RULE 52.08 CLASS ACTIONS

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The mattes pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already

commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

**(c) Determination by Order Whether Class Action to Be Maintained—Notice—Judgment—Actions Conducted Partially as Class Actions.**

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this Rule 52.08(c)(1) may be conditional and may be altered or amended before the decision on the merits.

(2) In an class action maintained under Rule 52.08(b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that: (A) the court will exclude the member from the class if requested by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if desired, enter an appearance through counsel.

(3) The judgment in an action maintained as a class action under Rule 52.08(b)(1) or Rule 52.08(b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under Rule 52.08(b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in Rule 52.08(c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

(4) When appropriate an action may be brought or maintained as a class action with respect to particular issues or a class may be divided into subclasses and each subclass treated as a class, and the provisions of this Rule 52.08 shall then be construed and applied accordingly.

**(d) Orders in Conduct of Actions.** In the conduct of actions to which this Rule applies, the court may make appropriate orders:

(1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

(2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;

(3) imposing conditions on the representative parties or on intervenors;

(4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly;

(5) dealing with similar procedural matters. The orders may be combined with an order under Rule 62, and may be altered or amended as may be desirable from time to time.

**(e) Dismissal or Compromise.** A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.